UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | §<br>§<br>§ |
| v. | § Criminal No. 06-102-02 (JDB) |
| DAVID SUCHIT, et al., | §<br>§ |
| Defendants. | §<br>§ |

**GOVERNMENT'S OPPOSITION TO DEFENDANT SUCHIT'S MOTION
TO SEVER DEFENDANTS**

For the reasons set forth below, the United States of America ("United States" or "Government") opposes Defendant Suchit's Motion To Sever Defendants ("Defendant's Motion"), and urges that Defendant's Motion be, in all things, denied.

**Nature of the Case**

On September 20, 2006, a federal grand jury in the District of Columbia returned a 2-count superseding Indictment charging defendant David Suchit ("Mr. Suchit" or "defendant") with: (1) Conspiracy to Commit Hostage Taking Resulting in Death, in violation of 18 U.S.C. §1203(a); and (2) Hostage Taking Resulting in Death, in violation of 18 U.S.C. §1203(a).  As set forth more fully in the superseding Indictment, Mr. Suchit and his ten co-defendants are charged with conspiring, beginning in February of 2005 and continuing until April 15, 2005, to take hostage seriatim United States citizens Dinesh Maharaj and Balram Maharaj in order to obtain ransom money belonging to Balram Maharaj for their release.  [*See* Superseding Indictment, Count One, ¶¶ 5, 7-10]  Mr. Suchit and is co-defendants are also charged with the armed abduction of Balram Maharaj, holding him hostage, causing his death, dismembering and burying his body, and thereafter, taking further steps to avoid detection for their crimes.  [Id.,

Count One, ¶¶ 6, 10; Count Two, ¶¶ 2-3]

## Allegations Against Mr. Suchit

With regard to Mr. Suchit, the grand jury charged specifically, *inter alia*, that Mr. Suchit knowingly conspired with the other co-defendants to abduct and hold for ransom Dinesh Maharaj and Balram Maharaj [*see* Count One, ¶ 5]; and:

(9)   On or about March 10, 2005, a conspirator, whose identity is known to the Grand Jury, approached DAVID SUCHIT with a plan to kidnap Balram Maharaj and demand as ransom a large sum from monies Balram Maharaj had obtained from a monetary settlement resulting from a serious personal injury;

(10)   On or about March 10, 2005, DAVID SUCHIT considered the plan and agreed to participate in the conspiracy to kidnap Balram Maharaj;

(11)   On or about March 11, 2005, DAVID SUCHIT agreed with a conspirator, whose identity is known to the Grand Jury, to recruit and assemble others to kidnap and hold hostage Balram Maharaj;

(12)   On or about March 15, 2005, when the conspirator who recruited DAVID SUCHIT became impatient that DAVID SUCHIT was taking too long to assemble other conspirators, the conspirator assigned DAVID SUCHIT a more narrow future role in the conspiracy;

\*          \*          \*          \*

(63)   On or about April 9, 2005, DAVID SUCHIT drove a conspirator, whose identity is known to the Grand Jury, around Trinidad and assisted the conspirator in contacting one or more conspirators by telephone to discuss the progress in the ransom negotiations with the family of Balram Maharaj, following which the conspirator informed DAVID SUCHIT that the family of Balram Maharaj wanted proof that Balram Maharaj was alive;

(64)   On or about April 9, 2005, DAVID SUCHIT offered advice and encouragement to a conspirator, whose identity is known to the Grand Jury, to make a voice recording of Balram Maharaj which could be used by the conspirators in their ransom negotiations as satisfactory proof that Balram Maharaj was still alive;

\*          \*          \*          \*

    (80)    On or about April 15, 2005, at the direction of one conspirator, whose identity is known to the Grand Jury, DAVID SUCHIT went to meet with a second conspirator, whose identity is known to the Grand Jury, and carried a message to the second conspirator from a third conspirator, whose identity is known to the Grand Jury;

    (81)    On or about April 15, 2005, DAVID SUCHIT met with the second conspirator and delivered the message from the third conspirator that Balram Maharaj was dead and DAVID SUCHIT passed on a coded message to the second conspirator to keep quiet about the kidnaping;

    (82)    On or about April 15, 2005, the second conspirator told DAVID SUCHIT to tell a third conspirator that, because Balram Maharaj was now dead, the second conspirator stood to gain access to substantial inherited funds and would see that the third conspirator was paid from those funds.

[<u>Superseding Indictment</u>, Count One, ¶10]

Thus, as charged by the grand jury, Mr. Suchit was involved in the conspiracy ***before*** and ***during*** the taking of Balram Maharaj hostage, and continued to be involved ***after*** the murder, dismemberment, and burial of Balram Maharaj. As set forth above, Mr. Suchit was initially to have had a leading role in the abduction and holding hostage of the victim. However, when Mr. Suchit did not assemble quickly enough the necessary crew, his role was reduced to a supportive one. In his continuing role, Mr. Suchit – knowing the victim had been abducted and was being held for ransom – essentially chauffeured around Trinidad one of the main conspirators to assist in, and enable, the coordination of the conspirators' ongoing ransom demands. In his supportive role, Mr. Suchit affirmatively suggested a method to secure the requisite "proof of life" to be used in the ongoing ransom negotiations. Thereafter, knowing of the victim's murder, Mr. Suchit agreed to -- and did -- take messages from a group of conspirators to one of the instigators of the hostage taking, advising of the victim's death and warning the instigator to keep quiet about the kidnapping. Further, Mr. Suchit took a return message from the instigator to the other

conspirators that, despite the victim's death – indeed, because of it – the instigator would see that they were paid.

## Procedural Posture

Mr. Suchit has been arraigned on the superseding indictment. Mr. Suchit has entered a plea of "not guilty" to the charges in the superseding indictment. Trial is scheduled to begin on February 12, 2007.

## THE ALLEGATIONS OF DEFENDANT'S MOTION

In his Motion, Mr. Suchit suggests that his trial should be severed from that of his co-conspirators because "Mr. Suchit's involvement in this case was minimal, at best." [Motion, page 3, ¶ 1] Further, Mr. Suchit worries that the evidence of the acts of his co-conspirators in this "particularly gruesome crime" would "undoubtably" taint the jury's consideration of Mr. Suchit's "unique issues." [Id., page 3, ¶ 2] Mr. Suchit claims, without support or elaboration, that his defenses and the defenses of his co-conspirators might conflict at trial. [Id., page 4, ¶ 5] Mr. Suchit concludes that the "great disparity" between the weight of the evidence against Suchit's co-conspirators and the "paucity" of evidence against Mr. Suchit necessitates severance. [Id., page 4, ¶ 6]

For the reasons set forth below, Mr. Suchit's Motion is without merit and should be denied.

**Defendant's Motion Is Without Merit**

Federal Rule of Criminal Procedure 8 permits the joinder of defendants and charges where the charges arise from "transactions connected together or constituting part of a common scheme or plan," Rule 8(a), and where "the defendants are alleged to have participated in 'the same series of acts or transactions constituting an offense or offenses.'" Rule 8(b). Therefore, in conspiracy cases, such as this, severance is the rare exception rather than the rule. This is especially true where, as here, the defendants are all connected by a single conspiracy and the evidence against one is therefore admissible against all. In cases such as this, there is a strongly articulated preference by courts for a joint trial. *See* United States v. Richardson, 167 F. 3d 621, 624 (D.C. Cir. 1999); *see also* United States v. Soto-Beniquez, 356 F.3d 1, 29-30 (1st Cir. 2004) (because conspiracy cases involve evidence admissible against all members of the conspiracy, severance is rarely, if ever, required, even where there is great disparity in acts committed by the various co-conspirators); United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003) (same); United States v. Kehoe, 310 F.3d 579, 590 (8th Cir. 2002) ("rare case, if ever, where a district court should sever the trial of alleged co-conspirators"); United States v. Booker, 334 F.3d 406, 415 (5th Cir. 2003) (conspirators should be tried together absent a showing of "specific and compelling prejudice."); *cf.*, United States v. Gray, 292 F.Supp.2d 71, 87 (D.D.C. 2003) (Lamberth, J.)(defendant not entitled to severance to avoid "spillover" effect of evidence against other defendants where there is substantial independent evidence of each defendant's significant involvement in the conspiracy). This is true even if all of the conspirators are not charged in each, or all, of the substantive counts. *See* Schaffer v. United States, 362 U.S. 511, 512-13 (1960). Nor is severance appropriate simply because some of the conspirators did not participate

in each and every phase of the conspiracy, *see* Blumenthal v. United States, 332 U.S. 539, 556-57 (1947), or because one conspirator's role in the conspiracy was smaller or less important than another's.  *See* United States v. Tarantino, 846 F.2d 1384, 1399 (D.C. Cir. 1988); Soto-Beniquez, 356 F.3d at 29-30; Spinelli, 352 F.3d at 55; United States v. Neresian, 824 F.2d 1294, 1303 (2d Cir. 1987).

An order denying a defendant's motion to sever will not be disturbed absent a showing of an abuse of discretion and a determination that a joint trial resulted in prejudice sufficient to deny due process of law.  United States v. Gbemisola, 225 F.3d 753, 760-61 (D.C. Cir.  2000).

In this case, the conspiracy at issue is focused and compact  – the abduction of Balram Maharaj in order to obtain a ransom for his release.  Although it is true, as it is in virtually every conspiracy, the actions and the roles of the various conspirators were not identical, the object of the conspiracy was both common and constant.  As established above, the superseding indictment alleges substantial and independent evidence of each co-conspirator's significant involvement in some critical aspect of the overarching conspiracy.   Prosecution of each defendant for the charges in which he has been indicted will necessarily require, by virtue of the conspiracy,  "presentation of much of the same evidence, testimony of the same witnesses, and involve [the same] defendants who are charged, *inter alia*, with participating in the same illegal acts."  United States v. Manner, 887 F. 2d 317, 325 (D.C. Cir. 1989) (*quoting* United States v. Sutton, 801 F.2d 1346, 1365 (D.C. Cir. 1986)).  Accordingly, the principles set forth above disapproving severance in the context of conspiracy apply and there is nothing exceptional in this case to warrant multiple trials.

The strong presumption against severance notwithstanding, Mr. Suchit raises here two number of specific arguments in support of his Motion to Sever: (1) gross disparities in evidence; and (2) mutually antagonistic defenses.  Because there is no merit to Mr. Suchit's first contention and because Mr. Suchit fails to allege any factual support for his second contention, Mr. Suchit's Motion should be denied.

Gross Disparity of Evidence and Prejudical Spillover

Mr. Suchit's Motion claims that his participation in the conspiracy was minimal in comparison to that of his co-defendants.   As a result, he claims, severance is warranted because the jury may inappropriately apply the ample evidence against the other defendants against him. *See generally* United States v. Hernadez, 780 F.2d 113, 119 (D.C. Cir. 1986); United States v. Sampol, 636 F.2d 621, 647 (D.C. Cir. 1980).  However, disparity of evidence, in and of itself, is no reason for this Court to sever these defendants' trials.  This is so, because Intervention is required only when "the cumulation of the evidence against all the defendants may lead the jury to be either confused or prejudiced in assessing the evidence against the particular defendant." United States v. Butler, 822 F.2d 1191, 1194 (D.C. Cir.1987); *see also*  United States v. Wood, 879 F.2d 927, 937 (D.C. Cir. 1989) (relevant inquiry, for purposes of severance, "is whether the testimony was so prejudicial that the jury was unable to compartmentalize the evidence.")

Moreover, severance based on an alleged disparity of evidence between defendants should rarely be granted pretrial for the fundamental reason that it is difficult to assess a claim of disparate evidence until the evidence is produced and presented. *See, e.g.*, United States v. Haldeman, 559 F.2d 31, 72-73 (D.C. Cir. 1976).  Steps short of severance may well be sufficient to alleviate the concern and allow for the preservation of limited judicial resources.  In this

regard, in most instances, instructions to the jury "to consider the evidence separately against each defendant ... provide significant safeguards against the dangers of prejudice." Butler, 822 F. 2d at 1194.

In this case, as established above, Mr. Suchit initially joined the conspiracy with the intention of being the leader of the actual hostage taking and guarding of Balram Maharaj.  It was only after he failed to gather together expeditiously enough his crew of abductors that he was demoted to a supportive role.  In that role, Mr. Suchit continued to participate following the abduction of the victim while the victim was being held and a ransom for his release was being negotiated.  Mr. Suchit drove one of the leaders around the island of Trinidad to assist the leader in making contact with other conspirators through the use of (untraceable) public telephones. Mr. Suchit made affirmative suggestions as to how the conspirators could satisfy the victim's family's demand for proof that Balram Maharaj was alive.  Thereafter, knowing of the victim's murder, Mr. Suchit voluntarily acted as a conduit for messages between conspirators, including a warning not to speak to the Police and a promise, in return, that the conspirators would yet be paid for their hostage-taking endeavors. Mr. Suchit is a member of  the conspiracy and thus the acts of all of the conspirators in furtherance of the conspiracy are attributable to him.  United States v. Tarantino, 846 F.2d 1384, 1399 (D.C. Cir. 1988).  In turn, because the evidence and the charges are overlapping, and because the overlap was caused by the involvement of Mr. Suchit in the conspiracy, severance of Mr. Suchit's trial from that of his co-defendants is not required. *See id*.

Hence, because Mr. Suchit's involvement in the conspiracy was substantial and because his involvement spanned before, during, and after the abduction and murder of Balram Maharaj,

there is no reasonable likelihood of unfair prejudice to Mr. Suchit by proceeding with a joint trial. Because a joint trial does not present a reasonable likelihood of unfair prejudice to Mr. Suchit, his Motion to Sever is without merit and should be denied.

## Mutually Antagonistic Defenses

Mr. Suchit's Motion claims baldly that "there is a substantial probability that the defendants' defenses irreconcilably may conflict." [Motion, page 4, ¶ 5] However, Mr. Suchit's Motion fails to aver – much less establish – any basis for his self-serving claim, and therefore fails to meet the requisite threshold in support of his Motion. This is so, because the defendant bears the burden of showing his differing defense is actually irreconcilable with a co-defendant's defense, and that the jury would unjustifiably infer from the conflict alone that all co-defendants are guilty. *See* Rhone v. United States, 365 F.2d 980, 981 (D.C. Cir. 1966); *see also* United States v. Caldwell, 543 F.2d 1333 (D.C. Cir. 1974). Moreover, severance is not required as a matter of law even where co-defendants in fact present "mutually exclusive defenses." *See* Zafiro v. United States, 506 U.S. 534, 540-41 (1993). For instance, the hostility created by one defendant's strategy of exonerating himself by pointing the finger at his co-defendant does not, by itself, require separate trials. United States v. Wright, 783 F.2d 1091, 1093 (D.C. Cir. 1986); United States v. Leonard, 494 F.2d 955, 966-67 (D.C. Cir. 1974); *and see* United States v. Najjar, 300 F.3d 466, 474 (4th Cir. 2002) (concluding one defendant's guilt not the logical conclusion of another co-defendant's assertion of innocence).

Because Mr. Suchit has not identified, much less established, a *bona fide* irreconcilable conflict among the defenses to be offered by the various defendants, his Motion is without merit and should be denied.

WHEREFORE, for each of the independent reasons set forth above, the United States urges that Defendant Suchit's Motion for Severance of Defendants is without merit and should be, in all things, denied.

                                        Respectfully submitted,

                                        JEFFREY A. TAYLOR (D.C. Bar No.498610)
                                        United States Attorney

By:     _____
        BRUCE R. HEGYI (D.C. Bar No. 422741)
        JEANNE M. HAUCH (D.C. Bar No. 426585)
        Assistant United States Attorneys
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        (202) 305-9637 (Hegyi)
        (202) 514-5775 (Hauch)
        www.bruce.hegyi@usdoj.gov
        www.jeanne.m.hauch@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT SUCHIT'S MOTION TO SEVER DEFENDANTS was served this 2nd day of November, 2006, by fax and by First Class Mail, postage pre-paid, on defendant's counsel of record:

      DIANE LEPLEY, ESQUIRE
      400 SEVENTH STREET, N.W.
      SUITE 400
      WASHINGTON, D.C.  20004
      (202) 628-0249 (FAX)

_____
Bruce R. Hegyi