UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 06-102-02 (JDB) |
| | ) | |
| DAVID SUCHIT | ) | |
| | ) | |
| Defendant. | ) | |

# PRAECIPE

By this praecipe, will the CLERK OF THE COURT please include this discovery letter and the discovery requests as a part of the record.

Respectfully submitted,

*/s/ Diane S. Lepley*
Diane S. Lepley, Bar No. 368927
400 Seventh Street, N.W., Suite 400
Washington, D.C. 20004
(202) 393-0007

400 Seventh Street, N.W.   ❏   Suite 400   ❏   Washington, D.C. 20004

**By mail and facsimile (202) 353-9414**

October 30, 2006

Bruce R. Hegyi, Esquire
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530

    Re:    <u>United States v. David Suchit, Crim. No. 06-102-02</u>

Dear Mr Hegyi:

    As we discussed, I am sending you this letter with my requests and questions about pending discovery matters. Given the atypical manner in which this case came into the system, I have not received a standard discovery package. Instead, I received your letter, dated July 28, 2006 with the accompanying documentation, tapes/discs and the following:

    1. Copies of my client's statements on October 4, 2005, January 8, 2006 (in Trinidad) and on January 17, 2006,

    2. Press release regarding the United States reward,

    3. A copy of De Four's statement under caution,

    4. Draft 302 and my client's statement on June 28, 2006, along with the rights card and waiver of presentment in Miami, and

        –I do not have the FD 340 referenced in the 302 or any of the attached documents. Please provide me with a copy of each of them.

    5. Disc containing photos from January 8, 2006–is there a list, or report, about what these photos depict?

        -- did the other disc (corrupted) contain the photos from January 6, 2006?

I would like to obtain the following:

(202) 393-0007   ❏   (fax) (202) 628-0249   ❏   dslepley@smart.net

1. Passport application of Balram Maharaj

2. Other than the U.S. passport, what evidence, if any, do you have that the decedent was a United States citizen? Please provide me with a copy of that evidence.

3. Do you have any evidence that any part of this crime was committed on United States soil? Upon what facts/statute do you base jurisdiction?

4. All documents, including the provisional arrest request and supporting documentation sent to Trinidad relating to David Suchit

5. Transcripts of all hearings in Trinidad regarding David Suchit and all of his alleged co-conspirators, including all evidentiary hearings.

6. Copy of the current bilateral treaty and extradition agreements, including diplomatic letters, between the United States and Trinidad/Tobago upon which the Government relies. I have the transmittal letter and the proposed treaty from 1996 but I am not sure that it is the final version upon which the defendant was brought here. Please provide the relevant documents.

7. The Trinidad/Tobago (TT) Attorney General's fugitive warrant

8. As a part of the international agreements, have the two countries promised that their extradited citizens will enjoy any of the trial rights accorded U.S. citizens?

9. Crimestoppers: I understand that Crimestoppers has declined to provide a copy of the audiotape(s) to the U.S. Government. Please indicate how many calls were made by Mr. Suchit and when they were made, as well as their duration, if you know. What was the defendant's code that he was to provide to Crimestoppers? Were both of the rewards (TT and US) run through the same telephone number and organization? What is the connection between Crimestoppers and the TT govt/police/US govt.? When did the TT police learn about the deft.'s tip(s). When did the US learn about the deft's tip(s)?

10. Copies of the agreements between TT and Mr. Suchit about his role in regard to the TT prosecution, records regarding payment to him and arrangements about his security, and the signed agreement between Suchit and TT. What kind of security program was he in?

11. Embassy records, if any, about meetings with (and in regard to) Suchit

12. Telephone records of Suchit pertaining to his telephone. Telephone records of the pay phone(s) where ransom or other related calls were made

13. All police reports generated by the TT authorities in re: Suchit and his alleged co-conspirators

14. Information about how and by whom Suchit was transported to the U.S. Embassy on

every occasion

15. Under what circumstances and when did the TT govt. promise Suchit that he would not be prosecuted?

16. It is my understanding that Suchit met with Forbes more than once. How many times did they meet? What were the circumstances? What statements did Suchit make to Forbes and what were the circumstances? Please provide any notes or reports regarding any of these contacts between Suchit and Forbes. Who was present each time?

17. Early January, 2006-- Information about the circumstances surrounding Suchit's "helping" the TT authorities in the arrests of Straker and Doreen. I need to know the people present and the content and circumstances of those conversations.

18. In my interview of Agent Clauss, I believe that he indicated that the TT govt. used Suchit twice as a ruse against the co-defendants but I am not sure about this. Please clarify.

19. January, 2006 statement at Arouca Police station–may I get a copy of the original statement with Suchit's signature. Please provide me with any reports about the Agent's contact with Suchit in January, 2006.

20. February, 2006 contact between Suchit and Clauss-what statements were made? Is there a 302/notes?

21. What is the status of the various co-defendants?

22. Copy of the emergency certificate issued by the Immigration Department of the Republic of Trinidad and Tobago issued prior to Suchit boarding plane for US

23. What information, if any, do you have that someone connected to the Trinidad police or military was giving information about the investigation to the co-defendants? What was that compromised person's role in this case–before and now? What information, if any, do you have that the co-defendants or someone connected to them was looking to harm Suchit?

24. Where is Suchit's cell phone? Have you collected its stored memory. If so, I would like a copy of it. What about telephones connected to Straker (and Doreen and the other co-defendants–do you have any of those phone records? Did Suchit ever provide to Forbes Straker's telephone number? (10/04/05 statement) If so, when did he do this? Do you have the phone records for the pay phone near the Licensing Authority on Omera Road?

25. Do you have any information that anything that Suchit said in any statement turned out not to be true?

26. Do you have records supporting the phone call(s) between Straker and Doreen, referenced on p. 5 of Suchit's 10/05 statement?

27. Do you have a detailed map of TT that I may have?

28. Was the body found over a cliff in Laventille, Trinidad? If not, did anyone ever look there?

29. Does your investigation confirm that only Straker conducted ransom negotiations?

30. When did the TT and US officials begin working together on this kidnapping case? What oral and written understandings existed regarding cooperation, generally and specifically on this case?

31. One of the newspaper articles says the part of the ransom was paid. If that is so, what were the circumstances of the exchange?

32. I noticed that Straker's attorney asked for the "disclosure of station diary extracts from the La Horquetta and Arouca Police Stations." I would also like disclosure of these extracts. In particular, I would like them for the days: October 1 through October 6, 2005, January 8, 2006, January 14, 2006 and all other dates when Suchit was at one of these locations. I would like any and all reports dealing with the circumstances of his being there on all of the dates.

33. Who represented Suchit in TT? Did that attorney represent anyone else? I think Suchit had more than one attorney. I need identifying information (address, phone nos., etc.) on all of his attorneys.

34. Is it true that what happens in the US Embassy in TT is dictated by US, not TT, laws?

35. What, if any, physical evidence (other than the evidence pertaining to the body parts) do you have against Suchit? Other co-conspirators?

36. I have no reports by law enforcement other than those relating to Suchit's statements and those addressed in your initial discovery letter. Please provide the relevant reports

37. I have enclosed a copy of my standard discovery requests.

Thank you for your attention to these discovery matters. I look forward to hearing from you soon.

Sincerely yours,

Diane S. Lepley

Enclosure: discovery requests

## DISCOVERY REQUESTS

The defendant requests the following:

GENERAL BRADY DEMAND FOR FAVORABLE INFORMATION, EXONERATIVE EVIDENCE, NEGATIVE EVIDENCE, AND EVIDENCE OF LACK OF CRIMINAL INTENT AND KNOWLEDGE AND IMPEACHMENT

(a) Favorable Evidence

All evidence, information and material now known to the government or which may become known to the government or which through due diligence may be learned which is exculpatory in nature or favorable to the accused, or which may be used for impeachment of government witnesses.

(b) Evidence of Lack of Criminal Intent or Knowledge

All evidence arguably helpful to the defendant's claim that any acts or conduct by him were done (a) without criminal intent and (b) that all acts by the defendant were not knowingly done.

(c) Exonerative Evidence

All evidence illustrating that the acts, conduct and efforts of each defendant or others at his direction were done without criminal intent and such evidence that may exist which could or might by defense counsel be used or argued in support of the defendant's contention that in all of his acts and conduct, he lacked any criminal knowledge.

(d) Negative Evidence

All information in the possession of the United States Government which shows that the defendant was not involved or connected with or had no part in the activities or statements made by other persons which the government contends were co-conspirators but who have not been named as defendants.

(e) Impeaching Evidence

(1) The defendant specifically requests evidence or information which may be used to impeach any government witness or which may lead to evidence which might be used to impeach any witness.

(2) Defendant further requests disclosure of any statement of any individual which may be inconsistent, in whole or in part, with any other statement made by the same individual; and any statements made by any individuals, which are inconsistent, in whole or in part, with any statements made by other individuals who have given statements relevant to the charges against each defendant.

SPECIFIC BRADY AND LEWIS DEMANDS FOR INFORMATION PERTAINING TO WITNESS CREDIBILITY, BIAS, AND MOTIVE

    (a) Criminal Records

Criminal records and any list or summary reflecting the criminal record of any and all persons the government intends to call as witnesses at the trial of each defendant, including the FBI arrest and conviction records.

    (b) Misconduct

Any and all records and information revealing prior misconduct or bad acts attributed to the witness.

    (c) Bias

As to all persons who will testify for the government, either in its case in chief or in rebuttal, the following specific and detailed information is requested:

(1) The existence and substance, and the manner of execution or fulfillment, of any promises, agreements, understandings and arrangements, either written or oral, between the government and any prosecution witnesses, or his or her attorneys or representatives, wherein the government agrees, either expressly or implicitly, as follows:

    (i) not to prosecute the witness for any crime(s)

    (ii) not to prosecute a third party for any crime(s)

    (iii) to provide a formal grant of statutory immunity, or to provide an informal assurance that the witness would not be prosecuted in connection with any testimony given by him or her;

    (iv) to recommend leniency in sentencing for any crime(s) for which he or she is convicted, or to advise the court of any cooperation with the government;

    (v) to recommend a particular sentence for any crime or crimes for which he or she is convicted;

    (vi) to provide favorable treatment or consideration, that is money or the like, to the witness or to friends or relatives of the witness in return for the witness' cooperation and testimony;

    (vii) to compromise or diminish, or to recommend the compromise or diminution of any Federal, State or local taxes which the witness or friends or relatives or the witness or claim to owe;

    (viii) to make any other recommendation of any benefit, however slight, or to give any other consideration to the witness or friends or relatives of the witness;

    (ix) to cause the removal or destruction of the criminal record of such witness

           (x)   to cause any change of identity of such witness

       (2)  Any and all consideration or promise of consideration given to or on behalf of the witness or expected or hoped for by the witness.  By "consideration", the defendant refers to absolutely anything of value or use, including but not limited to criminal, civil or tax immunity grants, relief from forfeiture, assistance or favorable treatment or recommendations with respect to any criminal, parole, probation, civil, administrative or other legal dispute with the government or any other parties, payment of money or fees, witness fees and special witness fees, provision of food, clothing, shelter, transportation or other like benefits to the witness, his family or other associates, placement in a "witness protection program", and anything else which could arguably reveal an interest or bias in the witness in favor of the government or against the defense or act as an inducement to testify or to color testimony.

       (3)  Any and all threats, express or implied, made against the witness of criminal prosecutions, investigations, or potential prosecutions of the witness, relating to any probationary, parole or deferred prosecution status of the witness, and any civil, administrative, or other pending or potential legal disputes or transactions with the government.

   (d)  Prior Testimony

       (1)  The existence and identification of each occasion on which the witness has testified before any court, grand jury, or other tribunal or body or otherwise, or otherwise narrated in relation to the defendant, the investigation or the facts of this case.

       (2)  The existence and identification of each occasion on which each witness who is an informer, accomplice, co-conspirator, or opinion-maker has testified before any court, grand jury, or other tribunal or body.

   (e)  Files

       Any and all personnel files for the witness and the existence and identity of all government files for the witness.

   (f)  Records

       (1) Any and all records and/or information which could arguably be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the government's evidence or which could arguably lead to such records or information.

       (2)  The same records and information requested above  with respect to each non-witness declarant whose statements are to be offered into evidence.

   (g)  Mental Examinations

       A complete disclosure as to any mental examinations of the witnesses whether psychiatric or psychological, including any tests conducted during such examinations (whether or not any reports or statements resulted.).

   (h)  Polygraph Tests

       All reports, accounts, lists of questions and answers, results and interpretations of polygraph tests given by (or if given by others, in the possession of the government) to individuals

who have given or might have information about the same events and transactions referred to in the indictment.

DEFENDANT'S STATEMENTS

    (a) Statements of the Defendant

The hand-written, stenographic, mechanical or electronic recording or transcript of any oral or written statement, or portions thereof, made to any person which is in the possession of the government or which by due diligence could be obtained by the government made by the defendant or the defendant's agents.

    (b) Defendant's Grand Jury Testimony

The entire grand jury testimony of the defendant or the defendant's agents. This request includes all oral statements or interviews by any person connected with the United States Government or any agency thereof whether or not:

    (1) The stenographic, mechanical, electrical or other recording or transcript is a substantial verbatim recital of the statement;

    (2) The statement was recorded contemporaneously with its making; and

    (3) The statement relates to the proposed subject matter of the anticipated testimony of the witness.

STATEMENTS AND WITNESSES

    (a) Jencks Material

Any and all statements, memoranda and/or documents producible under 18 U.S.C. Section 3500.

    (b) Production Of Original Interview Notes

A copy of all original notes and memoranda (whether handwritten or otherwise) that may have been made by any and all agents investigating this case, including any person who may have been acting in an informer or undercover capacity.

    (c) Preservation Of Original Interview Notes

State and reveal in detail whether or not any notes and memoranda made by any Government agents have been destroyed and, if so, the following with reference thereto:

    (1) the reason for destruction;

    (2) Whether or not the same was destroyed on account of an existing police policy, regulation, or for some other reason;

    (3) When such destruction occurred.

(e) Names, Current Addresses and Telephone Numbers of:

(1) each person the government intends to call as a witness;

(2) each person the government has interviewed in connection with the investigation of this case whom the government does not intend to call as a witness, including without limitation, all witnesses who have information relevant or arguably relevant to any fact or issue in the indictment;

(f) Names of Witnesses Not Interviewed

The names of all persons who have information which might or could be relevant to the charges in the indictment who have not been interviewed by the government.

(g) Special Employees

(1) The names of any informants, special employees, and special investigators used in the investigation of this case, or persons hired, directed, requested and/or paid by the government to investigate, snoop or obtain information in any matter whatsoever in the investigation of this case.

(2) The names and classifications of any and all law enforcement officers, United States Attorneys, Assistant United States Attorneys, or other government employees who met with, talked to, or who were present at any meeting or discussion held with any informants and/or special employees of the government during the investigation of the offenses set forth in the indictment.

(3) A copy of any departmental rules or regulations pursuant to which any informant or special employee was hired, employed or requested to participate in the investigation of this case.

(4) The total amounts of money paid out to informants and special employees of the government in connection with this case.

(5) Any and all recorded or written memoranda of conversations, discussions with, or statements by informants and special employees of the government.

(6) Any and all receipts, vouchers or other books and records concerning money expended for informants, witnesses, and special employees of the government used in connection with the investigation of this case.

(h) The statement of any such person described pursuant to the preceding paragraphs, whether such statement be signed or unsigned and regardless of how recorded including any statement noted in any manner.

GRAND JURY INFORMATION

(a) Information presented to Grand Jury

(1) The names of all witnesses appearing before the Grand Jury in connection with the return of the indictment;

(2) The names, present addresses and telephone numbers of all persons whose

testimony was given to the Grand Jury by or through someone else in connection with the return of said indictment; and

   (3)  Copies of all documents and exhibits presented to the Grand Jury.

 (b)  Transcripts

  Transcripts of the testimony of all witnesses appearing before the Grand Jury.  If no transcript of minutes exists, a summary of the testimony.

 (c)  Information not presented to Grand Jury

   (1)  Summaries and copies of the statements of witnesses which were not presented or conveyed to the grand jury.

   (2)  Copies of all documents in possession of the government potentially relevant to the charges in the indictment and which the government did not present to the grand jury at the time this case was presented for Grand Jury consideration.

 (d)  Charge of Court

  A copy of the charge of the Court to the Grand Jury that returned this indictment.

 (e)  Grand Jury Proceedings

   (1)  A list of the names and titles of each government employee who was present in the Grand Jury room during the taking of any testimony (other than his or her own) in the course of the investigations of this case, or who was present during any other portion of the Grand Jury proceedings herein.

   (2)  A list of the names and titles of each government employee who, prior to the return of the indictment herein, examined outside of the Grand Jury's presence any document or other items obtained by means of any Grand Jury subpoena issued in the course of the investigation of this case.

   (3)  A copy of any letter or other document authorizing the examination of Grand Jury materials by each of the government employees.

   (4)  A list of all Grand Jury subpoenas issued for documents and/or testimony in this case.

ATTORNEY-CLIENT RELATIONSHIPS

 (a)  The name, address and qualifications of any expert witness:

   (1)  intended to be called by the government;

   (2)  who has been consulted by the government in connection with the investigation and preparation of this case; and

   (3)  the reports, analyses, and conclusions of any expert witness referred to in paragraphs (a) and (b) above, and all information and data upon which such opinion witness based

his or her opinion.

SIMILAR TRANSACTIONS

All evidence of transactions or conduct of the defendant and his agents or co-conspirators and their agents which are not the subject matter of the indictment in the instant case, but which the government might offer as evidence on the question of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The foregoing requests include all information known to the government or which by the exercise of due diligence would be known to the government.

Should any of the foregoing items be discovered subsequent to the initial compliance with this demand, the government is requested to notify, immediately and in writing, counsel for the defendant of such subsequently discovered items of material and forthwith produce the same.