IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** § § § § | |
| - vs - § | CRIMINAL No.   06-102-02 (JDB) |
| § § | |
| **DAVID SUCHIT,** *el al.* § § | |
| Defendants. § § | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT SUCHIT'S
### MOTION TO RETURN DEFENDANT TO COUNTRY OF ORIGIN

The United States of America ("United States" or "Government") opposes defendant David Suchit's Motion to Return Defendant to Country of Origin ("Defendant's Motion") because, as established below, Mr. Suchit's Motion fails to state a claim upon which relief can be granted.  Because Mr. Suchit's allegations, even if true, fail to make out a legally cognizable claim, his Motion is without merit and should, therefore, be denied.

*Nature of the Case*

Defendant David Suchit ("Mr. Sucht" or "defendant') is one of twelve Trinidadian nationals who have been indicted in the District of Columbia for Conspiracy to Commit Hostage Taking Resulting in Death and with Hostage Taking Resulting in Death, both charges being in violation of 18 U.S.C. § 1203(a).  According to the allegations of the superseding Indictment, beginning on or about February 1, 2005 and ending on or about April 15, 2005, Mr. Suchit and his co-conspirators, embarked upon a common plan to obtain the money of American citizen, Balram Maharaj, who was a visitor to the Island of Trinidad and who had relatives there.  The

conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son, Dinesh Maharaj, and to hold Dinesh for ransom.  However, the conspirators later discarded the initial plan and determined to kidnap Balram Maharaj and sought to obtain a ransom of Mr. Maharaj's money, from Mr. Maharaj's relatives, for his release.  On April 6, 2005, in accordance with their plan, Balram Maharaj was abducted. and a ransom of $3,000,000 Trinidad (approximately $500,000 US) was demanded for his release.  Mr. Maharaj was held captive at a hideout in a mountainous jungle region of Trinidad.  On or about April 13, 2005, Mr. Maharaj expired at the remote hideout, as he languished in the hands of the conspirators.  Following Mr. Maharaj's death, members of the conspiracy dismembered his body and buried his body parts at another remote location in the mountainous jungle.

By April 15, 2005, the ransom demands had ceased.

On April 27, 2005, the United States Embassy issued a press release, *inter alia*, offering a reward of $10,000 US for information leading to the location of Mr. Maharaj and to the arrest and conviction of those responsible for the abduction of Balram Maharaj.

In January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a mountainous jungle region in Trinidad.

### The Allegations of Defendant's Motion

In his Motion, Mr. Suchit correctly claims he was arrested in Trinidad on April 27, 2006 pursuant to a Provisional Arrest Warrant from the United States. [*See* Motion, page 2]  Further, Mr. Suchit's Motion fairly recites that, prior to his arrest on the American warrant, Mr. Suchit had not been charged in Trinidad with any local crime related to the kidnapping of Balram Maharaj. [*See* id.]  Additionally, Mr. Suchit's Motion accurately reports , and that on April 27,

2006 the Trinidadian Court advised Mr. Suchit that his extradition was sought by the United States. [*See* id.]  Moreover, Mr. Suchit's Motion correctly says that, on June 26, 2006, when he went before a Trinidadian Judge, Mr. Suchit "consented to the extradition." [Motion, page 3][1] Thereafter, Mr. Suchit Motion claims, without support, that Trinidadian officials "promised him, prior to the waiver, that he would be given the same 'deal' in the United States that he had in T/T." [Motion, page 4]   Then, apparently overlooking his arraignment in the Trinidadian Court on the Provisional Arrest Warrant from the United States and his Waiver of Rights with the Special Agents of the Federal Bureau of Investigations before leaving Port-of-Spain, Mr. Suchit's Motion alleges that "[b]efore he reached American soil, no one ever told him that he would be required to enter a guilty plea to criminal charges or stand trial with his co-defendants."  [Id.] Finally, Mr. Suchit's Motion appears to claim, that because Mr. Suchit *hoped* only to be a witness in the United States on the charges for which he knew he had been indicted,[2] and because in hindsight he would not have waived extradition from Trinidad, had he *understood* the United States Government *intended* to prosecute him pursuant to that indictment, Mr. Suchit's Motion asks this Court to order Mr. Suchit's return to Trinidad. [*See* Motion, page 4-5]

      As established below, Mr. Suchit's Motion is without merit and should be denied.

---

[1] Mr. Suchit's Motion errs when it claims Mr. Suchit's consent on June 26, 2006 occurred "on approximately the last day before the US provisional warrant would have lapsed...." [Motion, page 3]   Apparently, Mr. Suchit has confused the 60-day time frame, beginning on the date on which the Trinidadian Government had executed the Provisional Arrest Warrant on Mr. Suchit, for the United States Government to present the Trinidadian Government with an Extradition Package.  In fact, the Extradition Package for Mr. Suchit (dated June 7, 2006) was delivered to the Trinidadian Government on or about June 8, 2006.

[2] Although not dispositive, in any event, Mr. Suchit's Motion does not allege the United States Government was in anyway complicit in his misunderstanding.

**MR. SUCHIT'S MOTION IS WITHOUT MERIT AND SHOULD BE DENIED**

As best the Government understands the allegations of Mr. Suchit's Motion, he is claiming the United States lacks jurisdiction over him, essentially, because of his unilateral mistake of fact. The analysis and holding of *United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006), should be dispositive of Mr. Suchit's claim. In *Mejia*, two defendants claimed the District Court lacked jurisdiction over their case because "DEA agents took them into custody in Panama and transferred them to the United States without following the formal requirements of the extradition treaty between the two countries." Id. at 442. In rejecting the defendants' claims, the Court of Appeals for the District of Columbia Circuit found that their claims were governed by *United States v. Alvarez-Machain*, 504 U.S. 655 (1992), in which the Supreme Court considered a similar argument by a defendant who had (in fact)[3] been forcibly abducted from Mexico, flown by private plane to Texas, and then arrested by DEA agents. In *Alvarez-Machain*, the Supreme Court established the appropriate analytical framework:

> [O]ur first inquiry must be whether the abduction of respondent from Mexico violated the Extradition Treaty between the United States and Mexico. If we conclude that the Treaty does not prohibit respondent's abduction, the rule in *Ker* applies, and the court need not inquire as to how respondent came before it.

448 F.3d at 442 (*quoting Alvarez-Machain*, 504 U.S. at 662.) The "rule in *Ker*," referred to in the above, is the rule set our in *Ker v. Illinois*, 119 U.S. 436 (1886), as applied in *Frisbie v. Collins*, 342 U.S. 519 (1952), and as reaffirmed in *Alvarez-Machain*. Under the rule in *Ker*:

> [T]he power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction' .... [D]ue process of law is satisfied when one present in court is convicted of

---

[3] The *Alvarez-Machain* trial court concluded that the agents were responsible for the defendant's abduction, although they were not personally involved in it. *See* 504 U.S. at 657.

> crime after ... a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

*Alvarez-Machain*, 504 U.S. at 661-62 (*quoting Frisbie*, 342 U.S. at 522 (*quoting Ker*, 119 U.S. at 444).

In *Alvarez-Machain*, the Supreme Court went on to find that the extradition treaty "sa[id] nothing about the obligations of the United States and Mexico to refrain from forcible abductions of people from the territory of the other nation, or the consequences under the Treaty if such an abduction occurs." 504 U.S. at 663. Nor could the Court "infer from th[e] Treaty and its terms that it prohibit[ed] all means of gaining the presence of an individual outside of its terms." Id. at 668-69. Accordingly, the Supreme Court concluded that "respondent's abduction" was not in violation of the Extradition Treaty between the United States and Mexico; that the rule of *Ker* was fully applicable to the case; and that the fact of respondent's forcible abduction did not therefore prohibit his trial in a court in the United States "for violations of the criminal laws of the United States." Id. at 670.

Following the Supreme Court's guidance in *Alvarez-Machain*, the District of Columbia Circuit in *Mejia* rejected the defendants' jurisdictional claims. 448 F.3d at 443.

Mr. Suchit's Claims Are Vacuous

In the instant case, Mr. Suchit does not claim he was illegally and forcibly abducted from Trinidad; much less that the United States was complicit in it. To the contrary, his Motion readily admits he was lawfully (if unexpectedly) arrested by the Trinidadian authorities pursuant to a Provisional Arrest Warrant issued in the United States. [*See* Motion, page 2] Further, Mr.

Suchit admits that he was arraigned (albeit, unhappily) before a Trinidadian Court and apprised that the United States Government was seeking his extradition.  [*See* id.]  Finally, Mr. Suchit concedes that, some 60 days after he was originally notified that the United States was seeking to extradition him, he intentionally (now, regretfully) waived extradition before a Trinidadian Judge.  [Motion, page 3]

Because, as *Alvarez-Machain* makes clear, even if Mr. Suchit had been forcibly abducted from Trinidad at the behest of the FBI -- which he was not -- he would nevertheless not have stated a claim upon which relief could be granted.  Because Mr. Suchit's Motion fails to state a claim upon which relief can be granted, his Motion is without merit and should be denied.

WHEREFORE, for each of the independent reasons set forth above, Defendant David Suchit's Motion to Suppress Statements should be, in all things, denied.

    Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney

By: _____
BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C.  20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov

JEANNE M. HAUCH
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C.  20530

CERTIFICATE OF SERVICE

      I hereby certify that on this 7th day of December, 2006, a true and correct copy of the above and foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT SUCHIT'S MOTION TO RETURN DEFENDANT TO COUNTRY OF ORIGIN was served on the following by First Class Mail, postage pre-paid, upon:

      DIANE LEPLEY, ESQUIRE
      400 SEVENTH STREET, N.W.
      SUITE 400
      WASHINGTON, D.C.  20004


      _____
      BRUCE R. HEGYI
      Assistant United States Attorney