IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** § § § § | |
| - vs - § | CRIMINAL No.  06-102-02 (JDB) |
| § § | |
| **DAVID SUCHIT,**  *el al.* § § § | |
| Defendants. § § | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT SUCHIT'S MOTION TO DISMISS INDICTMENT BASED UPON DUE PROCESS VIOLATIONS

The United States of America ("United States" or "Government") opposes defendant David Suchit's Motion to Dismiss Indictment Based Upon Due Process Violations ("Defendant's Motion") because it is both premature and misguided.  As set forth more fully below, the Motion is premature, because Mr. Suchit has not identified the witnesses, nor the substance of their anticipated testimony, nor the efforts expended by him to secure the testimony he claims he requires.  The Motion is misguided, because Mr. Suchit is able secure the testimony he says he needs through the timely and appropriate employment of Letters Rogatory.

*Nature of the Case*

Defendant David Suchit ("Mr. Sucht" or "defendant') is one of twelve Trinidadian nationals who have been indicted in the District of Columbia for Conspiracy to Commit Hostage Taking Resulting in Death and with Hostage Taking Resulting in Death, both charges being in violation of 18 U.S.C. § 1203(a).  According to the allegations of the superseding Indictment, beginning on or about February 1, 2005 and ending on or about April 15, 2005, Mr. Suchit and

his co-conspirators, embarked upon a common plan to obtain the money of American citizen, Balram Maharaj, who was a visitor to the Island of Trinidad and who had relatives there. The conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son, Dinesh Maharaj, and to hold Dinesh for ransom. However, the conspirators later discarded the initial plan and determined to kidnap Balram Maharaj and sought to obtain a ransom of Mr. Maharaj's money, from Mr. Maharaj's relatives, for his release. On April 6, 2005, in accordance with their plan, Balram Maharaj was abducted. and a ransom of $3,000,000 Trinidad (approximately $500,000 US) was demanded for his release. Mr. Maharaj was held captive at a hideout in a mountainous jungle region of Trinidad. On or about April 13, 2005, Mr. Maharaj expired at the remote hideout, as he languished in the hands of the conspirators. Following Mr. Maharaj's death, members of the conspiracy dismembered his body and buried his body parts at another remote location in the mountainous jungle.

By April 15, 2005, the ransom demands had ceased.

On April 27, 2005, the United States Embassy issued a press release, *inter alia*, offering a reward of $10,000 US for information leading to the location of Mr. Maharaj and to the arrest and conviction of those responsible for the abduction of Balram Maharaj.

In January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a mountainous jungle region in Trinidad.

## The Allegations of Defendant's Motion

In his Motion, Mr. Suchit claims the superseding Indictment against him should be dismissed, because there are witnesses in Trinidad who have information "about the circumstances of the defendant's arrest, the making of one or more of his statements and the

underlying facts of this case." [Motion, page 2] According to the Motion, "known witnesses" are reticent to come to the United States and are unwilling to be interviewed in Trinidad. [Id.] Because, according to the Motion, defendant is unable to compel these witnesses "to testify in America or even to be present at a deposition in Trinidad," such witnesses will not be present at the Motions hearing or at trial. [Id., page 2-3] Because a defendant's right to compulsory process is a right afforded to Mr. Suchit by the Sixth Amendment, and because Mr. Suchit is allegedly unable to avail himself of this right, Mr. Suchit's Motion says the Indictment against him should be dismissed. [See Motion, pages 3-4]

As shown below, the allegations of Mr. Suchit's Motion is both premature and misguided.

**THE ALLEGATIONS OF DEFENDANT'S MOTION ARE WITHOUT MERIT
AND SHOULD BE DENIED**

**Compulsory Process For Foreign Witnesses**

Although federal courts have the power to subpoena United States residents and nationals found abroad to appear before them, see 28 U.S.C. § 1783; Blackmer v. United States, 284 U.S. 421, 436-38 (1932), they do not ordinarily have authority to subpoena foreign nationals located in foreign countries. See United States v. Yates, 345 F.3d 1280, 1283 (11th Cir. 2003); United States v. Olafson, 213 F.3d 435, 441 (9th Cir. 2000); cf., United States v. Liner, 435 F.3d 920, 924 (8th Cir. 2006). However, if a court is unable to secure the presence of an overseas witness, it may authorize depositions to be taken abroad that may, under limited circumstances, be admitted into evidence in a criminal trial. See Fed. R. Crim. Pro. 15. In this regard, Rule 15(a)(1) provides, inter alia:

A party may move that a prospective witness be deposed in order to preserve

> testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data.

Id.; *see e.g., United States v. Medjuck*, 156 F.3d 916 (9th Cir. 1998); *United States v. McKeeve*, 131 F.3d 1, 8 (1st Cir. 1997); *United States v. Gifford*, 892 F.2d 263 (3d Cir. 1989); *United States v. Salim*, 855 F.2d 944 (2d Cir. 1988); *United States v. Nippon Paper Indus.Co.*, 17 F.Supp. 2d 38, 41-43 (D. Mass 1998).

In order to establish the requisite "exceptional circumstances," the party must "show the witness's unavailability and the materiality of the witness's testimony." *United States v. Lanier*, 435 F.3d 920, 924 (8th Cir. 2006); *see also United States v. Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994) (identifying same two "critical factors"). In addition, some Courts require proof that the "testimony is necessary to prevent a failure of justice" or other considerations. *See United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *see also United States v. Ruiz-Castro*, 92 F.3d 1519, 1533 (10th Cir. 1966) (identifying the three factors as among those to be considered); *United States v. Thomas*, 62 F.3d 1332, 1342 (11th Cir. 1995) (listing consideration of unavailability, materiality, and "countervailing factors [that] would make the deposition unjust to the nonmoving party"); *United States v. Aggarwal*, 17 F.3d 737, 742 (5th Cir. 1994) (denial of the motion may be based entirely upon the fact it is untimely).

Compliance with Rule 15 is a necessary, but not a sufficient, condition for use of a deposition at trial.[1] *See United States v. McKeeve*, 131 F.3d 1, 8 (1st Cir. 1997). Rather,

---

[1] As a general matter, depositions are to be taken in the same manner as depositions in civil cases. *See* Fed. R. Crim. Pro. 15(e)-(g).

admissibility at trial requires compliance with Rule 15, the Rules of Evidence, and the Constitution's confrontation clause. Id.

### The Confrontation Clause of the Sixth Amendment

The Confrontation Clause provides, *inter alia*, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses *against him*." (Emphasis provide.) In *Maryland v. Craig*, 497 U.S. 836 (1990), the Supreme Court explained that this provision embodies four interrelated protections: (1) it requires that testimony be given under oath; (2) it provides the opportunity for cross-examination; (3) it permits the jury to see the witness testify and thereby gauge the witness' demeanor and credibility; and (4) it affords the defendant the opportunity for a physical, in-person, confrontation with the witness.[2]  497 U.S. at 844.

As is readily apparent, the Confrontation Clause is not implicated by Mr. Suchit's Motion, because his Motion complains of his alleged inability to compel witnesses *on his behalf*. [*See* Motion, pages 2-3 ("Defense counsel is unable to compel witnesses to testify....")]  Hence, the deposition testimony sought by Mr. Suchit would be admissible if it was taken in compliance with Rule 15 and the testimony offered satisfied the Rules of Evidence.

### Mr. Suchit's Motion Is Premature

Mr. Suchit's Motion fails to identify the witnesses he claims he needs and the materiality of the witnesses' testimony.  Further, Mr. Suchit's Motion fails to establish that the evidence is otherwise unavailable to him.  Finally, Mr. Suchit Motion fails to identify the efforts expended

---

[2] Although the face-to-face confrontation forms "the core" of the values embodied in the Confrontation Clause, the right to in-person confrontation is not absolute. *See Craig*, 497 U.S. at 850-58; *but see United States v. Yates*, 438 F.3d 1307, 1314-16 (11th Cir. 2006) (*en banc*) (criminal-trial testimony of two foreign witnesses by live, two-way closed-circuit video teleconferencing impermissibly deprived defendants of right to face-to-face confrontation.)

by him to secure the testimony of any such witnesses.

Because Mr. Suchit's Motion fails to establish either the need for the testimony or the basis for its self-serving claim of unavailability, the Motion is premature and its issues are not ripe for adjudication. Moreover, as shown below, the Motion's claims of helplessness are misguided, in any event.

<u>Mr. Suchit's Motion is Misguided</u>

Mr. Suchit's self-serving claims of helplessness are misguided. To be sure, in a strictly domestic prosecution, the Constitution does not grant the defendant a dismissal simply because a witness refuses to testify on his behalf. Were it otherwise, every criminal defendant could effectively veto any indictment by claiming that a person with exculpatory information is unwilling to testify because of the witness' 5th Amendment concerns, fear of retribution, inconvenience, embarrassment, or merely because the witness is too shy or bashful to testify. Here, just as in a purely domestic prosecution, Mr. Suchit has available to him the mechanisms identified in Rule 15, as described above. Rule 15 affords Mr. Suchit, in the appropriate circumstance, the ability to obtain, preserve, and present testimony on his behalf at trial. Moreover, as established below, Mr. Suchit can compel the testimony of a recalcitrant foreign witness through resort to the international judicial mechanism of Letters Rogatory.

**Letters Rogatory**

Article 5 of the Vienna Convention on Consular Relations, to which both Trinidad & Tobago and the United States are parties, provides that:

> [T]ransmitting judicial and extra-judicial documents or executing letters rogatory or commissions to take evidence for the courts of the sending State in accordance with international agreements in force or, in the absence of such international agreements, in any other manner compatible with the laws and regulations of the

receiving State.

[*See* Declaration of Michelle Bernier-Toth (Exhibit A)][3]  Letters Rogator are "requests for international judicial assistance from courts of one country to the appropriate judicial authorities of another." [Bernier-Toth Decl., ¶ 4.] *Accord* Born, G.B., *International Civil Litigation in United States Courts* (3d ed. 1996), page 893; *and see* 6 *Moore's Federal Practice* (3d ed.) § 28.12; *and cf., United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (criminal defendants could have asked the District Court to issue letters rogatory to the Costa Rican court to obtain evidence, but failed to so do).

In this case, as established by the Declaration of Michelle Bernier-Toth, the United States Department of State has additionally confirmed with David West, Head of the Central Authority Unit for the Attorney General's Office of the Republic of Trinidad & Tobago, that "the courts in Trinidad & Tobago will accept letters rogatory from courts in the United States." [Bernier-Toth Decl., ¶ 5]  Moreover, if requested to so do, the United States Department of State will transmit letters rogatory from the United States District Court to the government of Trinidad & Tobago via diplomatic channel for further transmission to the appropriate judicial authorities in Trinidad. [Bernier-Toth Decl., ¶ 6]

Because, as established above, Mr. Suchit is able to compel the testimony of foreign witnesses on his behalf, the contention in his Motion to the contrary is misguided.

Because Mr. Suchit's Motion is both premature and misguided it is without merit and the relief it seeks should, therefore, be denied.

---

[3]  Ms. Bernier-Toth is the Acting Managing Director of the Directorate of Overseas Citizens Services of the Bureau of Consular Affairs for the United States Department of State. [Bernier-Toth Decl., ¶ 1]

WHEREFORE, for each of the independent reasons set forth above, Defendant David Suchit's Motion to Dismiss Indictment Based Upon Due Process Violations should be, in all things, denied.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney


By: _____
BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C.  20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov


JEANNE M. HAUCH
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C.  20530
(202) 514-5776

CERTIFICATE OF SERVICE

      I hereby certify that on this 7th day of December, 2006, a true and correct copy of the above and foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT SUCHIT'S MOTION TO DISMISS INDICTMENT BASED UPON DUE PROCESS VIOLATIONS and Exhibit was served on the following by First Class Mail, postage pre-paid, upon:

      DIANE LEPLEY, ESQUIRE
      400 SEVENTH STREET, N.W.
      SUITE 400
      WASHINGTON, D.C.  20004

      _____
      BRUCE R. HEGYI
      Assistant United States Attorney