UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal No. 06-102-02 (JDB) |
| | ) |
| DAVID SUCHIT | ) |
| | ) |
| Defendant. | ) |

## SECOND SUPPLEMENT TO DEFENDANT'S MOTION TO DISMISS INDICTMENT BASED UPON DUE PROCESS VIOLATIONS

COMES NOW, David Suchit, by and through his undersigned counsel, and respectfully submits this second supplement to his Motion To Dismiss Indictment Based Upon Due Process Violations as follows:

**Procedural History**

On November 20, 2006, the Defendant filed a Motion To Dismiss Indictment Based Upon Due Process Violations which was opposed by the Government on December 7, 2006. In that Opposition, the prosecution argued that Mr. Suchit's allegations of constitutionally impermissible handicaps resulting from the American choice of forum could be remedied by him. The prosecution pointed to the international letter rogatory, which the government contended was the proper vehicle for the defendant to obtain witnesses and evidence in support of his claim. Thus, the government argued that the issue was premature. On December 22, 2006, the defendant responded in his Omnibus Reply To Government's Oppositions To Defendant's Pretrial Motions by asking the trial court to hold his initial motion until he could conduct additional investigation and discovery and

supplement it, as the government contended was required of him.

On February 8, 2007, after his counsel and investigator had traveled to Trinidad to investigate and to discover certain matters, the defendant filed a Supplement To Defendant's Motion To Dismiss Indictment Based Upon Due Process Violations, stating his intention to submit a letter rogatory for documentary evidence and to determine what live witnesses, if any, the defendant would seek to bring to America to testify at his trial. This position was reiterated at the pretrial motions hearing conducted on February 12-13, 2007.

On March 30, 2007, Mr. Suchit filed an Unopposed Motion for Issuance Of An International Letter Rogatory with the international discovery letter attached. On April 2, 2007, the Court issued an Order granting the defendant's request for such an international letter rogatory to the Republic of Trinidad and Tobago.

**Facts**

Status hearings were held on April 11, 16, and 19, 2007, at which time the case schedule and the outstanding trial and discovery issues were discussed, including the trial court's request for supplemental memoranda on a specific subject generated by the ongoing litigation and the defense motion to dismiss.

During those hearings,[1] defense counsel argued that the prosecution, not the defendant, should be held accountable for searching, and acquiring, some of the requested items, set forth in the international letter rogatory, e.g., official law enforcement records which may contain exculpatory

---

[1] A substantial portion of the hearing on April 16, 2007 is under seal because the defendant made ex parte proffers about the relevance and materiality of the items he requested in his letter rogatory and upon which he relies in this memorandum.

information. Status Tr. 4/11/07 at 4-6.[2] In addition, the defendant requested the production of official logs, as well as the perusal of investigative files. The government has indicated that the Arouca Police Station logs are divided according to the administrative division at the station and that there are separate log books for the kidnaping and homicide units and for the overall general log kept for the station house. These log books are documents which are separate from the various units' investigative files.

Of particular importance to the defendant, and one of the matters at issue by this motion, are the investigative files of CID (believed to be the Criminal Intelligence Division), if any. The government has advised defense counsel that it has been informed that CID keeps logs, not files. To date, nothing from CID has been provided to the parties, nor has the prosecution been permitted to examine any CID records. The defendant has not received any of the things requested in his international letter rogatory, other than a photographed copy of the Arouca Station homicide unit's logs[3] which were obtained by FBI agents and forwarded to defense counsel.

The Government has represented that it has, in fact, initiated a search of multiple investigative files and logs that are possessed by various law enforcement units of the police department in Trinidad and Tobago to determine whether any exculpatory (or evidentiary, for that matter) material exists which should be disclosed to the defendant. Unfortunately, these attempted searches have not led to the prosecution being given access, unfettered or otherwise, to many of the requested files and sought documents. The reason for the government's inability to obtain

---

This memorandum references only the unsealed portions of the record.

[3]Upon information and belief, the government has also received redacted and edited copies of the Arouca Station's general logs. Neither party has any version of the kidnaping or CID logs.

3

Trinidad's complete assistance in the necessary examinations and production of potentially exculpatory records is unknown.

The evidence, if any, against Mr. Suchit comes from multiple statements made by him to various law enforcement officers in the United States and in Trinidad and to one civilian witness, Nirmal John, the decedent's brother, who is expected to testify at trial. Mr. John, who is believed to have a criminal record in both countries, reportedly had many conversations with law enforcement entities about the defendant's statements. As such, the defendant has made specific demands for those criminal records, as well as copies of any notes and/or statements he made during the course of the investigation of this case. To date, none has been provided,[4] although it is certainly arguable that any discrepancies or inconsistencies in Mr. John's statements present potentially exculpatory evidence and impeachment materials.

<u>Issue Presented</u>:   I. **Whether the prosecution's <u>Brady</u>, <u>Giglio</u> and <u>Bagley</u> obligations include a duty to search files in the possession of law enforcement and other official entities in Trinidad and Tobago to determine whether they contain any exculpatory evidence which must be disclosed?**

**<u>The Brady Doctrine</u>**

It is well settled that suppression by the government of material evidence which is favorable to the accused violates due process. <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). This principle was extended in <u>United States v. Bagley</u>, 473 U.S. 667 (1985) where the Supreme Court held that there was no distinction between exculpatory and impeachment evidence for <u>Brady</u> purposes and finding that regardless of the request by the defendant, favorable evidence is material, and constitutional error results from its suppression by the government "if there is a reasonable probability that, had

---

[4]The defendant recognizes that he would not be entitled to <u>Jencks</u> Act statements until the witness had testified.

the evidence been disclosed to the defense, the result of the proceeding would have been different." 473 U.S. at 682. This probability analysis is determined by the four aspects of materiality[5] set forth by the Bagley court. The bedrock question is whether the defendant received a fair trial and a verdict worthy of confidence where it is clear that he was deprived of certain evidence.

Although the prosecution has a certain amount of discretion is determining what it shall disclose to the defendant, the courts have clearly placed a substantial burden and a concomitant duty upon the government "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419 (1995). In Whitley, the government failed to disclose contemporaneous eyewitness statements, multiple informant statements and certain exculpatory documentary evidence. Even though some of this evidence was known only to the police and not to the prosecutor, the Supreme Court held that the government's attorney had the responsibility to disclose favorable evidence when the reasonable probability standard had been reached regardless of any failure by the police to notify the government about that information. Id.

This imposed requirement is consistent with the Court's earlier admonition that procedures and regulations could be established to carry the prosecutor's burden and to insure communication of all relevant information on each case to every lawyer who deals with it. Giglio v. United States, 405 U.S. 150, 154 (1972). The American prosecutor plays a special role in the search for truth in criminal trials as a representative of the sovereignty whose primary interest is to make sure justice

---

[5] Determination of materiality is the crux of the Brady analysis. As illustrated in Strickler v. Greene, 527 U.S. 263 (1999), the prosecution's failure to disclose information which would have impeached a key witness was improper but did not result in a reversal because the non-disclosures were immaterial and non-prejudicial.

5

is done. In re Sealed Case No. 99-3096 (Brady Obligations), 185 F.3d 887 (D.C. Cir. 1999). See also Berger v. United States, 295 U.S. 78, 88 (1935). Thus, that sealed case was remanded for a determination of the existence of material impeachment evidence that met the reasonable probability test.

The scope of the prosecutor's search has typically "involved files maintained by branches of government 'closely aligned with the prosecution.'" United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992)(citation omitted). The Brooks defendant specified the files he wanted the government to search which were housed in police department, not in the prosecutor's office. This Circuit indicated its support for other Federal circuits' impositions of an affirmative duty on prosecutors to inquire about potentially exculpatory materials, predicated upon the premise that the government's "failure to turn over an easily turned rock is essentially as offensive as one based on government non-disclosure." Id. at 1503. The closeness of the working relationship between the Washington metropolitan police and the U.S. Attorney for the District of Columbia mandated that the prosecutor was accountable for searching outside files for exculpatory evidence.

**The Duty of the Prosecutor**

It is the scope of the prosecutor's duty which is presented in the instant case. This appears to be a question of first impression, as the defendant has uncovered no case which deals with the government's Brady obligations where the files are located in a foreign country.[6] Assuming,

---

[6]The Second Circuit's case, United States v. Yousef, 327 F. 3d 56 (2d.Cir. 2003) considers a defense allegation that the convicted terrorists, who were foreign natives living in America, were denied due process in the conduct of the trial because they were unable to obtain certain specified evidence from overseas. The prosecution in Yousef provided the defendants with information which would have allowed them to obtain the evidence and witnesses they desired when the government, in one example, turned over the list of airplane passengers they wished to interview for possible testamentary purposes and where the defendants failed to use the procedural mechanisms to obtain

arguendo, that there are documents and files in Trinidad which are exculpatory in nature and would meet the litany of cases dealing with Brady and its progeny, the questions would then become whether the government must search for those documents and what should the parameters of that search be.

Merely asking Trinidad for access to and production of records would be insufficient were the case in the United States, as the duty in this country is an affirmative probing one mandating examination, not one where the government attorney may merely accept the representations of police that no exculpatory evidence exists. This Circuit, in Brooks, supra, seems to suggest that the nature of the working relationship between the prosecutor and the entity that possesses the files to be searched plays a role (although it is unclear what the parameters of that role might be) in whether a prosecutor's duty to search is triggered. In this case, the files that Mr. Suchit requests to be searched are in the possession of Trinidad law enforcement officers, not a civilian organization, or even some other governmental entity, not closely tied to the investigation in this case. The fact that they are possessed by the police is a significant factor in the analysis proposed by the defendant.

In earlier pleadings in which the defendant argued that the United States and Trinidad were engaged in a "joint venture," the government denied any such relationship, citing to United States v. Abu Ali, 395 F. Supp. 2d 338 (E.D.Va. 2005) as persuasive reasoning. However, the prosecution conceded, as it had to, that the level of cooperation between the two governments showed an exchange of information and parallel investigations, Mot. Hrg. Tr. 2/13/07 at 51, 53. Calling the Trinidad investigation "independent," the government acknowledged that law enforcement

---

physical evidence or to persuade the court that the missing evidence was material. In contrast to this case, there was no claim that any of the requested evidence would have been exculpatory and material. The distinctions between Yousef and the instant case provide little guidance.

7

representatives of both countries conducted separate interviews instead of working together. Consequently, the United States neglected to have its representative present when many statements were taken, thereby failing to preserve its obligation to provide the defendant with notes and copies of all witness's statements and any exculpatory evidence, resulting in the prosecution now having to rely on Trinidad for disclosure of investigatory information. Such a lax procedure should not pass muster.

The prosecution, in the instant matter, appears to be relying on its diligence, through multiple attempts to acquire the requested files and information, as sufficient effort to meet the dictates of the Brady line of cases. Inability to comply, for whatever reason, should not vitiate constitutional rights. It is fundamentally unfair for the government to argue investigatory separation for the purpose of limiting the defendant's constitutional rights under the Fifth Amendment, but then to hide behind that separation in denying Mr. Suchit due process under the Sixth.

Besides, it is the United States that chose to indict the defendant and extradite him to this country. His homeland designated him solely a witness and no charges were lodged against him. Were this Court to hold that prosecutorial effort is all that is required, then the United States government could shield itself from constitutional obligations by having essential interviews conducted solely by foreign authorities, thereby severely curtailing the defendant from containing exculpatory information.

**Issue Presented:**     **II. What is the appropriate remedy where the Government is unable to search official files in Trinidad and Tobago to determine the presence of exculpatory evidence which must be disclosed?**

Like its predecessor, this issue also appears to be one of first impression. The Fourth Circuit's reasoning in United States v. Moussaoui, 382 F. 3d 453 (4th Cir. 2004) provides some

guidance in determining the appropriate remedy where the government is unable or unwilling to provide the defendant with the material evidence he requests. In <u>Moussaoui</u>, the defendant sought to interview enemy combatant witnesses who were in the custody of the United States and had been designated as national security assets.

In <u>dicta</u>, the court noted that

> the need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were founded on partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts within the framework of the rules of evidence.

<u>Id.</u>  Although this case deals with production of witnesses, and not exculpatory evidence, the reasoning is instructive. First, the Circuit found that Moussaoui had only to make a "plausible showing" of materiality. Noting that the Supreme Court in <u>Arizona v. Youngblood</u>, 488 U.S. 51, 55 (1988) held that the defendant's right to a trial that comports with the Fifth and Sixth Amendments prevails over governmental privilege, the <u>Moussaoui</u> court recognized that the body of case law dealing with constitutionally guaranteed access to evidence gives the government the choice to comply with a court order on discovery or suffer dismissal. Thus, where the instant prosecution does not provide defendant Suchit with exculpatory evidence, the remedy is dismissal of the indictment.

**Issue Presented:**    **III. Whether the government's inability to obtain witness statements located in Trinidad and Tobago which would ordinarily meet the dictates of the <u>Jencks</u> Act if they were in its possession negates the prosecution's duty to disclose such statements?**

Under the procedural rule that governs <u>Jencks</u> material, the prosecution is required to produce, upon defense request, "any statement of the witness" that was "in [its] possession and that

9

relate[d] to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a). Since the government apparently is not in possession of statements arguably meeting the other dictates of the Jencks Act, the government contends that it will not violate Jencks when it fails to obtain statements that are in the possession of Trinidad law enforcement authorities and that it has no duty to obtain them. As argued, infra, in Section I, the government bears a responsibility to obtain statements which meet the dictates of Brady and its progeny. The defendant contends that multiple inconsistent statements by Nirmal John, for example, would meet this test.

Mr. Suchit submits that he also is entitled to obtain statements of witnesses to use in effective cross-examination of those persons who have spoken to authorities on one or more occasions. This right has priority even over governmental privilege, which may invoke evidentiary privileges at the price of letting the defendant go free. Moussaoui, supra., quoting Jencks v. United States, 353 U.S. 657, 670-71 (1957). If governmental privilege does not override Jencks, likewise failure to obtain possession of applicable statements, a fortiori, should not override production of government witness's statements. As the Seventh Circuit said in Carey v. Duckworth, 738 F.2d 875, 878 (7th Cir. 1984)( admittedly, a Brady, not a Jencks case), "a prosecutor's office cannot get around Brady by keeping itself in ignorance, or compartmentalizing information about different aspects of a case." This premise should be adopted, as well, in the Jencks context. The defendant requests that this Court so order and that the government be required to obtain possession of its witness's statements to persons in Trinidad.

Respectfully submitted,

_____
Diane S. Lepley, Bar No. 368927
400 Seventh Street, N.W., Suite 400
Washington, D.C. 20004
(202) 393-0007

### Certificate of Service

I do hereby certify that a true copy of the foregoing has been served by first-class mail, postage prepaid, upon Bruce Hegyi and Jean Hauck, Assistant United States Attorneys, at 555 Fourth Street, N.W., Washington, D.C. 20530 this 4th day of May, 2007.

_____
Diane S. Lepley