UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Criminal No. 06-102-02 (JDB) |
| | ) |
| DAVID SUCHIT | ) |
| | ) |
|       Defendant. | ) |

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S
SECOND SUPPLEMENT TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT
BASED UPON DUE PROCESS VIOLATIONS**

The defendant David Suchit replies to the Government's Opposition to his Second Supplement to Defendant's Motion To Dismiss Indictment Based Upon Due Process Violations because the prosecution has mis-stated the central issue and has suggested that the Court examine legal precepts which are, in large part, wholly irrelevant to the questions presented.

**I.    The Government's remolding of its Brady, Bagley, and Giglio obligations into a more palatable issue for the prosecution by converting it to one involving discovery requirements ignores the question of first impression which is presented to this court.**

The government has recast the first issue presented by the defendant into something that was not raised. Despite government indications to the contrary, Mr. Suchit does not seek to have the prosecution carry his investigative water. Quoting to the defendant's second supplement, id. at pages 2-3, the government states that the defendant is transferring to it the responsibility for "searching and acquiring the various items Mr. Suchit sought in his April 2, 2007 Letters Rogatory to the Republic of Trinidad." [S*ee* Opp., page 2] The government leaves out the words "some of," [*See* Supp. page 2, line 18], thereby making it appear that Mr. Suchit is arguing that the government

should be held accountable for all the items he sought. Nothing could be further from the argument.

At the earlier hearings where this issue was addressed initially, in the second supplement, and at all times, the defense has indicated that only certain limited items set forth in his international letter rogatory should be transferred to the Government's side for examination and production. Those specific items are those which are potentially exculpatory, in the possession of the Trinidad law enforcement officers with whom the United States was working and narrowed to a few sub-parts[1] of the international letter rogatory, most notably:

> (h) statements, including any notes and reports by Trinidad law enforcement officers, made by Neermal John about David Suchit and/or the investigation of the kidnaping and death of John's brother, Balram Maharaj,...(j) station house diaries, abstracts, and/or logs of people located at the Arouca Police Station[2] for these days: October 2-4, 2005, January 2-9, 2006, January 15-18, 2006 and February 15-18, 2006 and (k) all of the investigative files and reports of law enforcement authorities relating in any way to the kidnaping of Balram Maharaj and the prosecution of David Suchit and others for associated crimes...[3]

---

[1] The defendant has referenced only three areas for discussion, as they are the ones more readily identifiable as including materials which are covered by the defense request. The defendant, however, does not suggest that no other item contains exculpatory materials meeting the constitutional requirements of Brady and its progeny, as he is not in a position to know what is included in the various records and files. It is the government which should have those answers. If the prosecution does not know and/or does not have access to the appropriate materials, then that factor, alone, causes concern that the government has not met its obligations.

[2] Although the defense request is broad, the Government limited its independent search for logs to those kept by the Homicide Unit. Upon learning that the defendant did not seek such a limitation, the Government then obtained redacted logs from the general log book. Upon information and belief, there are log books for the Anti-Kidnaping and Criminal Intelligence Units which have not been obtained in any form, although the government contends that it has obtained the Anti-Kidnaping investigative files.

[3] It is clear that the defendant would not be entitled to the wholesale disclosure of the government's or law enforcement's investigative files and logs, or to statements of witnesses during discovery if the site of the offenses in this case was in this country. But, it is equally clear that the

[*See* Letter pages 6-7].  This is not a discovery issue.[4]  The letter rogatory seeks other items not produced during discovery which the defendant contends might assist in his defense.  Only if a requested item is exculpatory or a part of a statement would it come into play in this motion.

The government's Opposition addresses a large part of its argument to the appropriate procedures for production of trial witnesses and compulsory process.[5] [*See* Opp., pages 4-6] Defendant Suchit is not requesting the compulsory process or production of any witness.

**II.   The government has not discharged its burden to produce Brady, Bagley and Gigilio materials.**

The prosecution asks this court to rule that merely the foreign location of certain designated items discharges its responsibilities under the dictates of <u>Brady</u>, <u>Bagley</u>, <u>Giglio</u>, and <u>Jencks</u> and it uses a series of hypothetical fact patterns,[6] completely unlike the instant case, as support for its contention.  Unlike in those, here, there was a kidnaping for ransom in Trinidad leading to the

---

defendant would be entitled to demand that the Government execute its responsibilities under <u>Brady</u> and <u>Jencks</u> and to examine those files for items which are required to be produced.

[4] Discovery in this case has been anything but routine.  There was no standard discovery package with copies of relevant police reports setting forth the summarized facts (like in a PD163 or 251) transmitted to the defendant.  While the prosecution reportedly has given the defendant copies of all the relevant documents it possesses, it is apparent that many investigative documents remain in the hands of the Trinidadian police.

[5] The defendant's discussion of <u>United States v. Moussaoui</u>, 382 F. 3d 453 (4th Cir. 2004), <u>cert. denied</u>, 544 U.S. 931 (2005), was centered on the court's decision that dismissal was the appropriate remedy for an analogous issue.  The fact pattern dealing with production of overseas witnesses was not the legal question which the defendant sought to present to the court.

[6] Even the government's selection of certain specific facts inapposite to the instant ones doesn't support its position.  The hypothetical facts ignore the central difference that the primary investigative authority in each of the posited facts would be the United States, not Trinidad, and the central information would be located here, not outside America.  Moreover, setting up and then blowing down straw houses does not advance the analysis.

3

subsequent death of a naturalized U.S. citizen who was born in Trinidad and who lost his life at the hands of Trinidadians. The investigation was initiated by Trinidadian law enforcement officers who appear to have taken the lead in obtaining statements from witnesses. Thus, everything is tied to the foreign country except for the victim's status as a naturalized citizen. Like the location of the crime, all of the fact witnesses, with the exception of the FBI agents, are in Trinidad. All of the physical evidence, including documents, also can be located in that foreign country. Moreover, it is believed that the government of Trinidad requested that the United States prosecute these crimes.

Even if the prosecution's chosen facts did suggest a different result from the one argued by the defendant, that would not negate the assertions set forth by Mr. Suchit, as courts seldom deal in hypothetical facts or give advisory opinions.

Contrary to the government's statements, the defendant does not suggest that the prosecution "has greater responsibilities with regard to its prosecution of Mr. Suchit because his crimes were committed in Trinidad & Tobago than it would if Mr. Suchit had committed his crimes in the United States." [*See* Opp., page 6] Rather, the defendant contends that the prosecution's duty is identical. The obligation is the same; how it is implemented may differ. It is certainly arguable that a joint venture between the two countries began when the Republic of Trinidad and Tobago requested that this country prosecute the alleged co-conspirators. The fact that this government chose not to participate in all of the Trinidadian investigation does not shelter the prosecution from meeting its obligations under Brady, Bagley, Giglio , and Jencks.

**III.    Good faith diligence in attempting to obtain information does not shield the government from meeting its obligations when it fails to provide the defendant with material exculpatory documents.**

The defendant does not argue, nor could he, that the prosecutor has failed to make efforts

to obtain materials sought by the defense. The prosecution has advised the defendant about the status of discovery at each step of the way.[7] The government points to the transcripts of the proceedings in *Constable Wendell Lucas v. Doreen Alexander Durity, et al.* as an example of its efforts and diligence.[8] In addition, the prosecution reports about other requested items, e.g. log books and telephone records, which it has obtained. None of that, however, deals with the presented issue other than the prosecution's recitation of its efforts to obtain CID/CIU files/logs.

While the government's procedures and efforts are informative, they do not excuse its failure to meet its constitutional obligations. As the defendant has stated in earlier pleadings, the prosecution cannot transfer responsibility for investigation to foreign police officers and then claim lack of access or possession as a barrier to production.

IV.   **The government's suggestion of waiver and its timing allegations do not negate its duties under the law.**

Based upon its view that its efforts have exceeded its duty to the defendant, the government suggests that it is up to Mr. Suchit to decide how he wishes to proceed. Its Opposition contends that

---

[7] The level of cooperation between attorneys has been superior. Of particular note was the attorneys' concerted efforts to develop a strategy for obtaining the materials requested in the defendant's international letter rogatory without compromising each side's position about the timing and actual disclosure of the requested materials. Unfortunately, these facts are not helpful in determining the parties' respective duties and responsibilities in this motion.

[8] While it is true that the government very recently turned over those transcripts to the defendant, it is also true that they were requested early in the discovery process by Mr. Suchit and that it was the defendant's investigator who located the completed transcriptions in Trinidad in January, 2007 and who obtained the information about the court reporter (which was transmitted forthwith to government counsel). Yet, it took many more months for the defendant to receive any of that record. It was the defendant's information which allowed the prosecution to obtain part of the transcripts weeks, if not months, before the time the entire transcripts were transferred to undersigned counsel. However, quarreling about timing, by either side, does little to address the substantive issues before the court and misdirects the discussion to one of ineffectiveness or gamesmanship which serves no one.

it would be unfair for the court to dismiss this case because the defendant has the option of going forward with less evidence or requesting a continuance. In stating that dismissal would be unfair, the government suggests that the March, 2007 submission of the international letter rogatory was not timely and that the defendant waited too long to make his requests.[9] What the government does not say is that it has known for months that Officer Wendell Forbes obtained information in September, 2005 that Crime Stoppers had referred information about the defendant's call to CID/CIU. That this material information exists comes as no surprise to the prosecution. Moreover, the government's Brady obligation does not become triggered by a specific discovery request, especially since the defendant has made a Brady demand since October 30, 2006. [*See* Praecipe with attached discovery letter] The prosecution's Brady obligations were extant long before the international letter rogatory was even drafted.

It is certainly true, as the government asserts, that the defendant has the ultimate decision about whether he wishes to proceed to trial before he has obtained all of the requested documents and that he may waive his right to obtain such materials in favor of a speedier trial. That fact, however, does not mean that he is required to forego Brady materials in order to proceed to trial on June 4, 2007. As stated throughout the defense pleadings and arguments on this matter, there is a difference between discovery and Brady. As to the Constitution, no election is required.

---

[9] The defendant finds this commentary to be difficult to absorb, given defense counsel's constant communication with government counsel about the status of various discovery requests since the beginning of this case. It was only when it became clear, following the investigatory trip by defense counsel and her investigator to Trinidad in late January, 2007, that certain items were not forthcoming that the defendant decided that he needed to proceed on multiple discovery tracks. Moreover, putting the defendant to the task of obtaining materials that the government, with all of its resources and with its ongoing working relationship with Trinidadian authorities, admits it has been unable to obtain, seems disingenuous.

          Respectfully submitted,

          _____
          Diane S. Lepley, Bar No. 368927
          400 Seventh Street, N.W., Suite 400
          Washington, D.C.  20004
          (202) 393-0007

**Certificate of Service**

I do hereby certify that a true copy of the foregoing has been served by first-class mail, postage prepaid, upon Bruce Hegyi and Jean Hauck, Assistant United States Attorneys, at 555 Fourth Street, N.W., Washington, D.C. 20530 this 15th day of May, 2007.

          _____
          Diane S. Lepley