UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DAVID SUCHIT,<br><br>Defendant. | Criminal No. 06-102 (02) (JDB) |

ORDER

Before the Court is defendant's motion to dismiss the indictment based upon alleged due process violations. Defendant's motion, filed November 20, 2006, was initially premised on his alleged inability to compel witnesses residing in the Republic of Trinidad and Tobago ("Trinidad") to testify in the United States or to conduct depositions of those witnesses. See Def.'s Mot. to Dismiss at 2-3. Following further discovery and issuance of an international letter rogatory to Trinidad, defendant has largely abandoned the focus on a lack of access to witnesses and instead contends that the indictment must be dismissed on the ground that the prosecution has not fulfilled its duty to learn of exculpatory evidence that may be located in law enforcement files in Trinidad. See Def.'s Second Supplement at 4-10; see also Def.'s Reply to Gov't's Opp. to Second Supplement at 3 ("Defendant . . . is not requesting the compulsory process or production of any witness."). In response, the government contends that it has substantially exceeded its obligations to search for exculpatory evidence, and has detailed the status of its efforts to obtain evidence located in Trinidad in a status report dated May 17, 2007. A hearing was held on defendant's motion to dismiss on May 22, 2007.

The essence of defendant's argument is that, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), United States v. Bagley, 473 U.S. 667

(1985), and Kyles v. Whitley, 514 U.S. 419 (1995), the prosecution has a duty to search for exculpatory evidence in the files of Trinidadian law enforcement officials on the ground that those persons acted on the United States' behalf in investigating the hostage-taking crime charged in this case. See Def.'s Second Supplement at 6-8; Unofficial Hr'g Tr. at 13-14 (May 22, 2007). Defendant further contends that, notwithstanding the production of the files from the two primary investigating offices of the Trinidad and Tobago Police Force ("TTPF") and other related materials, several files in the possession of the TTPF have not been searched, and the bare fact of lack of access to those files results in a curtailment of defendant's due process rights because defendant is effectively precluded from finding out whether exculpatory evidence may exist in those unreviewed files. See Def.'s Second Supplement at 2-4; Unofficial Hr'g Tr. at 13-14. The government does not dispute the general principle that the "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." See Kyles, 514 U.S. at 437; In re Sealed Case No. 99-3096, 185 F.3d 887, 892 (D.C. Cir. 1999); see also United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992). It contends only that its duty is limited to files in the possession of the United States government "or reasonably available to it," citing Bagley, 473 U.S. at 674. See Gov't's Opp. to Def.'s Second Supplement at 5-6, 12-13. The remaining files in Trinidad are, in the government's view, not reasonably available or do not contain exculpatory evidence. Id. at 12-13; Gov't's Status Report at 8-11.

The resolution of this matter can be simplified by focusing on the three sets of documents highlighted by defendant: (1) an alleged investigative file in the possession of the TTPF Criminal Intelligence Unit; (2) general "station diaries" from the TTPF Arouca Police Station; and (3) "station diaries" of the TTPF Antikidnapping Unit. Based on the representations of the

government in its May 17, 2007 status report and at the motions hearing, the Court concludes that there is no likelihood that those files contain exculpatory evidence. Thus, assuming arguendo that the government's duty under Brady, Kyles, and their progeny extends to documents under the control of the Trinidad government,[1] the Court finds no due process violation on this record.

With respect to the files of the Criminal Intelligence Unit ("CIU"), the government has represented that the CIU functions as a "clearinghouse" that funnels information from confidential sources to other places for investigative purposes. See Gov't's Opp. to Def.'s Second Supplement ("Gov't's Opp.") at 11-12; Unofficial Hr'g Tr. at 14-15. Thus, the CIU is unlikely to have an independent investigative file. See Gov't's Opp. at 12. The TTPF offices that, in fact, conducted the investigation into the kidnapping of Balram Maaraj are the Antikidnapping Unit and the Homicide Unit, as discussed in the Court's Memorandum Opinion resolving defendant's earlier pretrial motions. See Mem. Op. at 4, 9 (filed Mar. 15, 2007) ("Mem. Op."). Those files are in the actual possession of the United States, and defendant does not contest that the

---

[1] Several cases cast doubt on the proposition that the government's Brady obligations extend to documents in the possession of a jurisdiction not subject to the prosecution's control, even where some amount of collaboration is involved. See, e.g., United States v. Mejia, 448 F.3d 436, 439-40, 444-45 (D.C. Cir. 2006) (rejecting defendants' contention that the government's disclosure obligations under Fed. R. Crim. P. 16 extended to documents in Costa Rica despite participation of Costa Rica in the investigation of the offenses charged); Kasi v. Angelone, 300 F.3d 487, 506 (4th Cir. 2002) ("we reject [defendant's] claim that Kyles imposes a duty upon a state prosecutor to conduct a Brady review of federal agency files," reasoning that those files "are in the possession of federal authorities over whom the Commonwealth has no authority"); Moreno-Morales v. United States, 334 F.3d 140, 146-47 (1st Cir. 2003) (rejecting defendant's contention that Kyles required imputing knowledge of the Puerto Rico Senate to federal prosecutors, because the prosecutors "did not have access to the Senate's papers and notes"). But cf. United States v. Risha, 445 F.3d 298, 304 (3d Cir. 2006) (observing that the determination of whether "cross-jurisdiction constructive knowledge" should be imputed to the prosecution in an overlapping federal-state investigation depends, in part, on whether the two jurisdictions "are part of a team or are participating in a joint investigation").

government has discharged its Brady obligations with respect to those files. Considering that the investigative files of the TTPF offices conducting the investigation have been reviewed for Brady material, and that the CIU does not conduct investigations, the Court finds that the unavailability of the CIU files (if any exist) for review by the prosecution does not suggest the withholding of any exculpatory evidence and thus does not give rise to a due process violation.[2]

The government's representations concerning the various TTPF Station Diaries also indicate that there is no likelihood of exculpatory evidence in that body of documents. The "general" station diaries from the Arouca Police Station were reviewed by the FBI, but contained no reference to defendant for the dates in question. Gov't's Status Report at 10. Thus, they were not photographed, and there was nothing to disclose.

As to the diaries of the Antikidnapping Unit in Arima, the government has explained that it did not review those diaries because defendant did not mention in his debriefings with the government that he ever went to the Antikidnapping Unit Station (Unofficial Hr'g Tr. at 25) -- in contrast to the Homicide Unit Station in Arouca -- nor did the government understand that defendant sought those diaries because that unit is not located in Arouca -- the focus of defendant's prior requests for diaries.[3] See Def.'s Mot. for International Letter Rogatory, Proposed Letter Rogatory at 6. Indeed, as noted in the Memorandum Opinion resolving

---

[2] The government informed the Court and defendant that it sent an agent to meet with the superintendent of the Criminal Intelligence Unit, who advised the agent that it can locate information concerning a call to Crimestoppers -- such as the one defendant made -- if the six-digit "tipster" number assigned to the caller is provided. Unofficial Hr'g Tr. at 16-17. The government further stated that the United States has never had defendant's six-digit tipster number, and defense counsel also does not have it, but that if defendant can provide it, it will continue its efforts to obtain any records that CIU may possess concerning defendant. Id.

[3] The government previously provided defendant with photographs of pages of the Homicide Unit Station Diaries in Arouca for the dates sought. See Status Report at 9.

defendant's motion to suppress, defendant is known to have visited only the Arouca station on the dates referenced by defendant -- October 2005, and January and February 2006. See Mem. Op. at 7-8, 12-13. The government represented at the motions hearing, however, that, given the clarification from defendant, it would voluntarily review the diaries of the Antikidnapping Unit Station. In light of these findings and representations, the Court concludes that there is no due process violation arising from the nondisclosure of the Antikidnapping Unit Station Diaries.

It bears noting that defendant also has objected to the absence of evidentiary disclosures concerning Neermal John, the decedent's brother, who is expected to testify at trial. Specifically, defendant contends that Mr. John's alleged statements to the Trinidad police and alleged criminal history are likely to contain exculpatory information and must be disclosed. See Def.'s Second Supplement at 4. However, as the government points out, defendant is not entitled to disclosure of witness statements under the Jencks Act "until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The government has represented that it will disclose Mr. John's statements to police at that time, and there is no reason to doubt that the government, at that time, will also disclose any criminal history within its actual or constructive possession.[4]

To the extent that defendant posits that a due process violation results from the limitation that the United States faces in searching Trinidadian law enforcement records for exculpatory

---

[4] Defendant alleges that Mr. John has a criminal history record in both the United States and Trinidad. Def.'s Second Supplement at 4. The present record before this Court does not reflect the status of Mr. John's criminal history in either country, but again, defendant is not entitled to that information unless and until Mr. John testifies. The Court notes that, as to the alleged criminal history records in Trinidad, the government has submitted a request for those records but has not yet received a response. See Status Report at 5-6. The Court anticipates that the government will continue diligently to pursue that information. See Unofficial Hr'g Tr. at 27.

evidence in some unspecified broader manner, defendant faces the difficulty that, to establish a Brady violation (including a violation of the Kyles duty to learn of exculpatory evidence) he must first establish that the withheld evidence is "material" -- that is, that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682.  This determination typically is made by assessing the fairness of a verdict after the trial of the matter.  See United States v. Oruche, --- F.3d ---, 2007 WL 1296601, at *5 (D.C. Cir. May 4, 2007) ("in regard to an asserted Brady violation the question is whether the failure to disclose significantly undermined the fairness of the verdict").  In light of the disclosures and representations made to date, there is no basis for concluding that the alleged nondisclosures would undermine the fairness of a verdict -- a verdict which is at this point unknown.

Accordingly, it is hereby

**ORDERED** that defendant's motion to dismiss the indictment based upon due process violations is **DENIED**.

/s/
JOHN D. BATES
United States District Judge

Date:  May 29, 2007