IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** § § § § | |
| - vs - § | CRIMINAL No.  06-102-02 (JDB) |
| § § | |
| **DAVID SUCHIT,** *el al.* § § | |
| Defendants. § § | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT SUCHIT'S
## MOTION FOR SANCTIONS

The United States of America ("United States" or "Government") opposes hereby Defendant David Suchit's ("Mr. Suchit's") Motion for Sanctions ("Mr. Suchit's Motion") [Document #106] and, for the reasons set forth below, urges that it be denied.[1]

*Pertinent Background*

For a time, Trinidad & Tobago Police Service ("TTPS") Anti-Kidnapping Unit ("AKU") Constable Phillip Forbes was the lead investigator into the April 6, 2005 kidnapping in Trinidad & Tobago of United States citizen Balram Maharaj.  In September of 2005, defendant David

---

[1] Mr. Suchit's Motion was filed sometime around 8:00 pm on Sunday, June 3, 2007. However, counsel for Mr. Suchit and the undersigned Assistant U.S. Attorney had been communicating for several days on the issue of the oral statements of Mr. Suchit to Constable Forbes.  In those conversations, among other things, this Assistant advised Mr. Suchit's counsel that he was preparing a Trial Memorandum on the subject and Mr. Suchit's counsel indicated her intention to bring the matter to the attention of the Court for resolution.  As a result, Mr. Suchit's Motion is not a surprise to the Government.  By coincidence, it appears that at almost exactly the same time that Mr. Suchit's Motion was being filed, the Government was e-mailing to Mr. Suchit's counsel a draft of the Trial Memorandum that the Government intended to provide to the Court on June 4, 2007.  That draft Trial Memorandum has been revised to become the Government's Opposition here being filed.

Suchit ("Mr. Suchit") made various voluntary statements to the brother (Neermal John) of the victim. As a result, Neermal John inquired if Mr. Suchit would be willing to speak with AKU Constable Forbes for Mr. Suchit to tell Constable Forbes what Mr. Suchit knew. Mr. Suchit agreed. Neermal John arranged a meeting between Forbes and Mr. Suchit at Neermal John's home and Neermal John was present for the meeting between Constable Forbes and Mr. Suchit and Forbes' interview of Mr. Suchit. At the time of this meeting (and subsequent meetings) AKU Forbes viewed Mr. Suchit solely as an informant with information that might be helpful to his investigation and never considered Mr. Suchit a target of the investigation.

In the United States' prosecution of Mr. Suchit, the Government timely provided to Mr. Suchit, *inter alia*, copies of various memoranda of TTPS Constable Forbes that set forth the substance of Constable Forbes meetings with Mr. Suchit. [*See* 28 Sept. 2005 Memo; 06 October 2005 Memo; 07 October 2005 Memo (cumulatively "the Forbes Memoranda")][2] These Memoranda (attached hereto) were admitted in evidence at the February 12-13, 2007 hearing on Mr. Suchit's Motion to Suppress Statements respectively as Government Exhibits 1, 3, & 4. As is readily apparent, these memoranda set forth summaries of Constable Forbes' meetings/interviews with Mr. Suchit.

---

[2] At the time, these were the only reports/memoranda/writings in the Government's possession relative to the meetings between Mr. Suchit and Constable Forbes (other than the FBI-302 related to the October 4, 2005 interview at the Embassy of the United States.) At the status in May of 2007, Mr. Suchit's attorney inquired for the first time as to whether or not there were any entries on certain days in the AKU Station Diaries that named her client. As a result, the Government immediately requested of a current-AKU member a review of the AKU Station Diaries on those days and a single entry was located, abstracted and provided to the Government. That abstract was immediately faxed to Mr. Suchit's counsel. As of May 31, 2007, this Assistant became aware of, and has copies of, (a) certain informal handwritten notes made by Corporal Forbes at the time of his interviews with Mr. Suchit, and (2) certain contemporaneous e-mails from Corporal Forbes about meetings with an "informant."

After regular business hours on the evening of May 31, 2007, as the undersigned Assistant U.S. Attorney was meeting with Forbes in the United States in preparation for Forbes' testimony at the trial of Mr. Suchit scheduled to begin on June 4, 2007, this Assistant learned additional information that further "fleshed out" the oral statements of Mr. Suchit to Forbes that are referenced in the three referenced Forbes' Memoranda. Early on the morning of June 1, 2007, this Assistant telephoned Mr. Suchit's attorney and left her VoiceMails on her office telephone and on her cellular telephone advising there was additional information learned about Mr. Suchit's oral statements to Constable Forbes and requesting that she return the telephone call so that more specific information could be provided. However, when this Assistant had not heard back from Mr. Suchit's attorney by 9:17 am on June 1, 2007, this Assistant sent an e-mail to Mr. Suchit's attorney providing examples of the additional information gleaned from Constable Forbes the night before. [*See* June 1, 2007 E-mail (attached hereto)]

In a subsequent telephone conversation on June 1, 2007 between Mr. Suchit's attorney and this Assistant, Mr. Suchit's attorney indicated her intention to object to the Constable Forbes being permitted to testify to the supplemental information set forth in the June 1, 2007 E-mail.

As set forth below, the oral statements of Mr. Suchit to Constable Forbes do not fall within the oral statements required to be disclosed under Rule 16(a)(1)(A), because the oral statements were not "in response to [the] interrogation" of Mr. Suchit by Constable Forbes. Moreover, assuming *arguendo* that Mr. Suchit's oral statements to Constable Forbes could fall within the ambit of Rule 16(a)(1)(A) – which they do not – the Government timely production to Mr. Suchit of the three Forbes Memoranda and the information contained in those Memoranda and hence did provide Mr. Suchit with "the substance" of Mr. Suchit's oral statements to

Constable Forbes, which is all that Rule 16 requires.

### Rule 16(a)(1)(A)

Federal Rule of Criminal Procedure 16(a)(1)(A) provides:

> **Defendant's Oral Statement.**  Upon a defendant's request, the government must disclose to the defendant *the substance* of any relevant oral statement made by the defendant, before or after arrest, *in response to interrogation* by a person the defendant knew was a government agent if the government intends to use the statement at trial.

*Id.* (emphasis provided).[3]

### The Oral Statements Were Not In Response to Interrogation

In the context of statements by a defendants in criminal prosecutions, the term "interrogation" has a readily-defined meaning. *See, e.g., Miranda v. Arizona*, 440 U.S. 934 (1966), *and its progeny*. As applied to the facts presented here, the Supreme Court's opinion in *Rhode Island v. Innis*, 446 U.S. 291 (1980), should control:

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) *that the police should know are reasonably likely to elicit an incriminating response from the suspect*.  The latter part of this definition focuses primarily on the perceptions of the suspect, rather than the intent of the police.  This focus reflects the fact that *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police.  *A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect amounts to interrogation*.

---

[3] In this case, the defendant timely requested, *inter alia*, the substance of relevant oral statements.  The potential issue as to whether the "government agent" must be an agent of the United States, or one of the several United States, or of an United States municipality – as opposed to an agent of a foreign sovereign government –  need not be here resolved.

*Id.* at 301-02. (emphasis provided; footnotes omitted);[4] *and see* Wright, C.A., <u>Federal Practice and Procedure/Federal Rules of Criminal Procedure</u>, Vol. 2, ch. 5 § 253 at 90 & n. 38 (West 2000); <u>Moore's Federal Practice</u>, Volume 25 § 616.03[4][a] at 616-36-37 & n.35 (Lexis/Nexis 3d ed. 2007).

At the time of Mr. Suchit's contacts with Constable Forbes (September - November, 2005), Mr. Suchit was not viewed by members of the TTPS as "a suspect." Rather, Mr. Suchit was viewed merely as an informant who had information potentially helpful to the TTPS investigation into the kidnapping of Balram Maharaj. Nor did Mr. Suchit view it differently, as at his first meeting with Constable Forbes (and Neermal John), he went willingly to the meeting with Constable Forbes that was arranged by Neermal John. At the meeting, Mr. Suchit provided to Constable Forbes essentially the same information he had earlier provided to Neermal John. Morever, *Mr. Suchit asked Constable Forbes* to confirm that Mr. Suchit had previously called Crime Stoppers, as Mr. Suchit was clearly concerned about being in line to obtain the Crime Stoppers' reward.

Because Mr. Suchit was not being questioned by Constable Forbes with the intention of obtaining incriminating responses from Mr. Suchit, Constable Forbes' interview of Mr. Suchit cannot constitute an "interrogation." Because Mr. Suchit was not being interrogated at the time he made the oral statements to Constable Forbes, the oral statements by Mr. Suchit to Constable Forbes are not implicated by the reach of Rule 16(a)(1)(A). Because the oral statements of Mr. Suchit to Constable Forbes do not fall within the ambit of Rule 16(a)(1)(A), the Government was

---

[4] In footnote 5 of its opinion, the Supreme Court indicates that "incriminating response" refers to any response – whether inculpatory or exculpatory – that the prosecution may seek to introduce at trial. 446 U.S. at 302 n.5.

not under any duty to provide to Mr. Suchit any information about – nor "the substance"of -- Mr. Suchit's oral statements to Constable Forbes. Because the Government was not under any duty to provide to Mr. Suchit in discovery the substance of the oral statements of Mr. Suchit to Constable Forbes, there cannot have been any Rule 16 violation. Because there was no Rule 16 violation, the oral statements of Mr. Suchit to Constable Forbes should be admissible in the Government's case-in-chief at trial.

The Government Provided Mr. Suchit With "The Substance" of His
<u>Oral Statements to Constable Forbes</u>

Moreover, even if the oral statements of Mr. Suchit to Constable Forbes did fall within the reach of Rule 16(a)(1)(A),[5] as is apparent from a review of the three Forbes' Memoranda attached hereto, the Government did timely provide Mr. Suchit with "the substance" of Mr. Suchit's oral statements to Constable Forbes. For instance, the 1-page <u>September 28, 2005</u> Memorandum (Exhibit 1 at the February 12-13, 2007 Suppression Hearing) indicates that Forbes received information from an "informant" [Suchit] who told Forbes that his friend "Andy Straker" is having some type of relationship with Doreen Alexander and that Doreen was the

---

[5] In the interest of transparent candor, whether or not the supplemental information was required to be produced to Mr. Suchit pursuant to Rule 16(a)(1)(A), if this Assistant had earlier been in possession of the more "fleshed-out" information of Mr. Suchit's oral statements to Constable Forbes, this Assistant would earlier have provided to Mr. Suchit's attorney a summary of the additional information similar to the summary contained in the June 1, 2007 E-Mail. Among other things, it had been anticipated that, following Mr. Suchit's arrival in the United States, Mr. Suchit would agree to plead guilty and would have cooperated against other targets in this investigation/prosecution.

person who told Straker the victim had a lot of money and she was trying to get him kidnapped for quite some time. The Memorandum continues:

> *The day after the victim was kidnapped[,] Andy came home by the informant* and tell him he [Andy] organized with an old soldier from behind Malick Barataria [a neighborhood in Trinidad] and his clip [meaning: his gang] to do the work [meaning: to handle the kidnapping].... * * * * **The informant also said that Andy took him [Suchit] to a house where he [Suchit] saw the old soldier who was at the time using a code name "LEO" when he spoke to Andy. This house [,] in the back of Malick [,] is where the victim was kept.** *Andy was the man who did the negotiations[;] he [Andy] only used pay phones* and [Suchit] can't say if any other phone was used. **The informant on one occasion overheard negotiating on the pay phone by [the] [L]icensing [Bureau] in Arima.** *On the day the victim died[,] Andy came to the informant scared telling him* that they [the victim's family] kept asking to here [sic: hear] his voice for them to pay the money, so when they tried to tape record the victim he refused and he was beaten till [he] died. *The soldier told Andy to talk to Doreen and tell her to hold her belly [meaing: do not say anything to the Police] and carry this to her grave, but* **Andy asked the informant to go and he [Suchit] did.** * * * *

[September 28, 2007 Memo (emphasis provided)[6]  The October 6, 2005 Memorandum refers to additional communications relevant to the kidnapping or Balram Maharaj between Constable Forbes and "an informant" -- meaning Mr. Suchit -- and that, among other things, the informant wishes to remain anonymous and that Suchit "claimed he had made calls to crime stoppers" and that Forbes had been able to verify that Suchit had indeed called Crime Stoppers and had supplied Crimes Stoppers with information on the kidnapping. [*Id.* (Exhibit 3 at February 12-13, 2007 Hearing), page 1]   The October 7, 2005 Memorandum references additional information received by Constable Forbes "from an informant" – meaning Mr. Suchit – on October 1, 2005

---

[6] Morever, Mr. Suchit was aware (from the October 4, 2005 FBI-302 and the testimony at the February 12-13, 2007 hearing on Mr. Suchit's Motion to Suppress Statements), that Constable Forbes was present at the October 4, 2005 interview of Mr. Suchit by FBI Agent William Clauss at the Embassy of the United States in Port of Spain, Trinidad, and therefore heard Mr. Suchit's oral statements to S.A. Clauss, as well.

"relative to the kidnapping of Balram Bachu Maharaj." [*Id.* (Exhibit 4 at February 12-13, 2007 Hearing), page 1]

Thus, assuming the Government had a Rule 16 obligation to provide Mr. Suchit with "the substance" of his oral statements to Constable Forbes, which it did not, the Government met its burden because, as shown above, it timely provided Mr. Suchit with "the substance" of his oral statements to Constable Forbes.

Because the Government provided Mr. Suchit with "the substance" of his his oral statements to Constable Forbes, there is no Rule 16 basis on which to deny the introduction in the Government's case-in-chief at trial of Mr. Suchit's oral statements to Constable Forbes.

There Is No Cognizable Harm to Mr. Suchit

Moreover, the introduction in the Government's case-in-chief of Mr. Suchit's oral statements to Constable Forbes visits no cognizable harm on Mr. Suchit.  This is so, because Rule 16(a)(1)(A)'s requirement that the Government provide a defendant with "the substance" of his or her oral statements resulting from an "interrogation" by a known Government agent is plainly intended to permit the defendant to determine whether or not a basis exists for the defendant to file a motion to suppress the oral statements.  In other words, was the oral statement arguably the result of a custodial interrogation under circumstances violative of the strictures of *Miranda*?  In this case, these initial meetings between Constable Forbes and Mr. Suchit were arranged – and attended – by a civilian neighborhood acquaintance of Mr. Suchit's (Neermal John), who Mr. Suchit knew was the victim's brother, and to whom Mr. Suchit had already provided various oral statements that were eventually repeated by Mr. Suchit to Constable

Forbes. Mr. Suchit's attendance at the meetings with Forbes and Neermal John were voluntary and non-custodial. Hence, *Miranda's* "custodial" pre-requisite cannot be satisfied, in any event.

Because the meetings between Mr. Suchit, Constable Forbes, and Neermal John were not custodial, there can be no legitimate *Miranda* basis to suppress the oral statements. Because there was no other or further basis on which Mr. Suchit could have sought legitimately to suppress his oral statements to Constable Forbes, Mr. Suchit cannot have suffered any cognizable harm.[7]

Further, Mr. Suchit <u>was</u> timely provided with copies of the three Forbes Memoranda that set out the substance of numerous (oral) communications between Suchit and Constable Forbes with regard to the kidnapping of Balram Maharaj. In this case, Mr. Suchit timely filed a Motion to Suppress Statements setting forth various theories and scenarios under which he urged the Court to suppress the majority of his oral and written statements. [*See generally* Document #46 (Motion to Suppress Statements); *and see* Government's Opposition, pages 4-5 (identifying and attaching Memoranda and reports evidencing oral or written statements of Mr. Suchit variously

---

[7] Under other circumstances, a tenuous argument might be advanced that the deprived defendant might have sought to marshal other evidence to attack at trial the veracity of the oral statement introduced against him at trial. However, in this case, Mr. Suchit was on notice from the Government of the substance of his oral statements to Constable Forbes (in the form of the three Forbes Memoranda) and therefore he was not deprived in his evidence-marshaling abilities. However, more importantly, it is beyond cavil that any other or further evidence could be marshaled. As Mr. Suchit was necessarily aware, there were three people at his initial meeting with Constable Forbes: (1) Mr. Suchit; (2) Neermal John; and (3) Constable Forbes. If Mr. Suchit wishes to testify at his trial, he always was – and is – free to so do. Mr. Suchit has no direct control over either Neermal John or Constable Forbes. In truth and in fact, there is simply nothing else Mr. Suchit could reasonably have done to marshal any other or further evidence at trial concerning his oral statements to Constable Forbes. Because, in any event, there was nothing more Mr. Suchit could have done to marshal addition evidence in relation to his oral statements to Constable Forbes, Mr. Suchit cannot credibly claim he suffered legitimate damage.

to Trinidad & Tobago law enforcement personnel and/or the FBI – *which specifically include the three Forbes Memoranda*]   On February 12-13, 2007, a comprehensive evidentiary hearing was had on Mr. Suchit's Motion.  On March 15, 2007, the Court filed its 33- page Memorandum Opinion and accompanying Order denying the relief sought in Mr. Suchit's Motion.  [*See* Document #75]

There was (and is) no other or further legitimate basis on which Mr. Suchit could successfully have urged the Court to suppress his oral statements to Constable Forbes.  Because there was no legitimate basis on which to suppress his oral statements to Constable Forbes, Mr. Suchit cannot have suffered a cognizable injury.  Because Mr. Suchit did not suffer a cognizable injury, no basis is seen to deny the Government the right to introduce in its case in chief the oral statements of Mr. Suchit to Constable Forbes.

Additional Matters Raised in Mr. Suchit's Motion

Mr. Suchit's Motion raises two other issues: (1) the cellular telephone records from Trinidad & Tobago, and (2) the newspaper articles about the kidnapping and the investigation accumulated by the victim's niece in Trinidad & Tobago.  Because of the press of time, these two issues will be addresses orally this morning before the Court.

Hence, the Government urges the Court that, at trial, after the Government has proven the existence of a conspiracy that included defendant David Suchit, Mr. Suchit bears the burden of proving his successful withdrawal as more fully set forth above.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney

By: /S/
_____
BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C. 20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov


JEANNE M. HAUCH
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C. 20530
(202) 514-5776