IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       §
                               §
- vs -                         §    CRIMINAL No.  06-102-02 (JDB)
                               §
ANDERSON STRAKER, *et al.*     §
                               §
            Defendants.        §

## GOVERNMENT'S RESPONSE IN COMPLIANCE WITH THE COURT'S ORDER DATED JULY 17, 2008

The United States of America ("United States" or "Government") responds hereby to the issues raised in the Court's Order [Document #230] dated July 17, 2008 (the "Court's Order").

In its Order, the Court directed the Government to (1) file its response, if any, to the motions of defendants Pierre and Nixon to exclude Rule 404(b) evidence; and (2) provide notice of whether or not the Government intended to use at trial the statements made by the defendants to the Trinidadian authorities, including defendant Straker's statements on January 6 and 7, 2006; defendant Pierre's statement on January 28, 2006; and defendant Sealey's statement on August 8, 2006.  [Order, page 1]  To the Court's Order, the Government responds as follows:

In his Motion in Limine [Document #217] "(Mr. Nixon's Objections"), Mr. Nixon seems

**Reply to Defendant Pierre's and Defendant Nixon's Objections to the Government's Notice of Intent to Introduce Rule 404(b) Evidence**

to say that the Rule 404(b) evidence against him is unnecessary, because he believes the other evidence the Government possesses is "sufficient to permit the jury to draw whatever inferences it thinks is appropriate concerning Mr. Nixon's state of mind and intent." [Nixon's Objections,

page 2] In addition, Mr. Nixon objects to the admission of the Rule 404(b) evidence against him because he says it is "extraneous and prejudicial evidence at his trial." [Nixon's Objections, page 2] Finally, Mr. Nixon requests that the Court perform a Rule 403 balancing prior to the admission of the evidence. [Nixon's Objections, pages 2-3] In his Motion and Memorandum For Disclosure of Basis For Intended Use of Other Crimes Evidence [Document #208] ("Mr. Pierre's Objections"), Mr. Pierre complains the Government's Notice "does not establish the particular basis for its admission in this case for each item of evidence" [Pierre's Objections, page 2], that, without such information, the Court will be hampered in its ability to perform appropriate Rule 403 balancing [*id*], and the Court will not be able to craft "appropriate limiting instructions." [*Id.*] Finally, Mr. Pierre's Objections state, no doubt with tongue firmly in cheek, "the defendant is unable to determine the material element as to which the evidence relates such as intent, knowledge, motive, or any other element of the charge so as to defend against the evidence." [*Id.*, pages 2-3]

In its Notice of Intention to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), the Government provided adequate and sufficient bases for the admission at trial of the "other crimes" evidence identified therein. Each of these "other crimes" involved hostage-takings for ransom; each occurred close in time to the hostage-taking for ransom of the victim in the instant case; each occurred in Trinidad & Tobago; each involved the same motivation; each involved the same characteristics; each was a part of a broader plan or scheme to obtain money for various members of the group of conspirators; and each involved many of the same conspirators. As a result, the evidence identified in the Government's Notice should be admitted

-2-

to prove identity,[1] intent,[2] motive,[3] common scheme, opportunity,[4] knowledge,[5] and absence of accident or mistake.[6] As established in the Government's Notice, the Rule is one of inclusion, rather than exclusion. Moreover, the standard for the admission of such evidence is merely a

---

[1] *See, e.g.*, *United States v. Simpson*, 479 F.3d 492, 498 (7th Cir. 2007) (the *modus operandi* theory requires a showing that the charged crime or its perpetrators and the "other crimes" share substantial distinctive characteristics); *United States v. Shumway*, 112 F.3d 1412, 1420 (10th Cir. 1997) (the degree of similarity must be "substantial," but cannot be reduced to any formula); *Snell v. Lockhart*, 14 F3d 1289 (8th Cir. 1994) (in prosecution of capitol murder that occurred during course of robbery of pawn shop in Arkansas, evidence that defendant attempted to rob a pawn shop in Missouri was properly admitted to prove motive, intent, and plan); *United States v. Powers*, 978 F.2d 354, 361 (7th Cir. 1992), *cert. denied*, 507 U.S. 935 (1993) (Court should focus on the similarities between the charged offense and the "other crimes" rather than their dissimilarities, as no two crimes are ever committed in precisely the same way).

[2] *See, e.g.*, *United States v. York*, 933 F.2d 1343, 1350 (7th Cir), *cert. denied*, 502 U.S. 915 (1991) (defendant tried for using mails in attempt to defraud an insurer, where his scheme involved killing his business partner, torching their tavern, and seeking to collect on her life insurance policy. Trial court properly admitted in evidence that defendant had previously murdered his wife and collected on her life insurance policy).

[3] *See, e.g.*, *United States v. LaFlam*, 369 F.3d 153 (2d Cir.), *cert. denied*, 543 U.S. 951 (2004) (trial court properly admitted evidence of defendant's drug use to prove motive to commit the charged bank robbery).

[4] *See, e.g.*, *United States v. Green*, 648 F.2d 587 (9th Cir. 1981) ("opportunity" is properly intended to include a defendant's ability and capacity to commit the charged crime); *United States v. Hamilton*, 992 F.2d 1126, 1130 (10th Cir. 1993) (prior theft of firearm admissible to show defendant's opportunity to commit armed robbery).

[5] *See, e.g.*, *United States v. Cassell*, 292 F.3d 788, 793 (D.C. Cir. 2002) (to prove unlawful possession, evidence that defendant possessed the same or similar things at other times is quite relevant to his knowledge and intent with regard to the charged crime); *United States v. Blitz*, 151 F.3d 1002, 1007-08 (9th Cir.), *cert. denied*, 525 U.S. 1029 (1998) (defendant's prior employment at another fraudulent telemarketing company was properly admitted to prove defendant knew current telemarketing company was engaged in fraudulent practices).

[6] *See, e.g.*, *United States v. Maestas*, 554 F.2d 834 (8th Cir. 1977) (in prosecution for interstate transportation of forged securities, evidence that in previous two month period the defendant cashed other forged checks, six of them drawn on the same bank, admissible to show defendant did not act through accident or mistake).

-3-

preponderance of the evidence that the defendant committed or is responsible for the other crime, wrong, or act. *See Huddleston v. United States*, 485 U.S. 681, 689-90 (1988). The Court may admit the "other crimes" evidence so long as it is satisfied that it is "relevant," with relevance determined by whether or not a jury *could reasonably conclude* by a preponderance of the evidence that the past act was committed by the defendant. *See Johnson v. Elk Lake School District*, 283 F.3d 138, 143-44 (3d Cir. 2002); *United States v. Clarke*, 24 F.3d 257 (D.C. Cir. 1994) (fact that cooperating witness easily arranged drug transaction with defendants, as well as his sworn testimony to having participated with them in other drug transactions provided adequate basis for a jury to reasonably conclude that prior "bad acts" of defendants actually occurred.)

Prior to admitting "other crimes" evidence, the Court should conduct a Rule 403 balancing. *King v. Ahrens*, 16 F.3d 265, 269 (8th Cir. 1994). Among the factors the Court should consider, but not by way of limitation, are: (1) the strength of the evidence of the other crimes; (2) the degree of similarity of the other crimes; (3) the proximity in time of the other crimes; (4) the need for the evidence; and (5) the efficiency of a limiting instruction. *See, e.g., United States v. Huddleston*, 485 U.S. at 691-92; *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000); *United States v. Fields*, 871 F.2d 188, 198 (1st Cir. 1989); *United States v. Aguilar-Arancela*, 58 F.3d 796, 801-02 (1st Cir. 1995); *United States v. Bradley*, 5 F.3d 1317, 1320-21 (9th Cir. 1993).

In this case, the evidence of the "other crimes" is very strong and will involve, among other things, the testimony of some of the other co-conspirators to those hostage-takings. Moreover, as previously established, the crimes, the locations, the timing, the motivation, the

-4-

method, the manner, the scheme, and the roles of the conspirators in each crime are very similar, and many of the same conspirators participated in these other hostage-takings for ransom.

As a result, with an appropriate limiting instruction, the "other crimes" evidence identified in the Government's Notice should be admitted at trial.

## Use at Trial of Defendants' Statements to Trinidadian Authorities

The Government does not intend to introduce at trial the statements made by defendants Pierre or Straker to the Trinidadian authorities. However, the Government will seek to introduce the statement, dated 8 August 2006, made by defendant Sealey to the Trinidadian authorities (copy attached.) With regard to this statement by defendant Sealey, the Government notes: (a) the statement was obtained by the Trinidadian authorities following his arrest on an outstanding Trinidadian warrant; (b) Mr. Sealey was provided with, and waived, warnings that he did not need to say anything unless he wished to do so, that anything he said could be "given in evidence," and that he had a right to a legal advisor; (c) Mr. Sealey's father, Hugh David Sealey, Jr., was present during the taking of his statement by the Trinidadian authorities; and (d) a Trinidadian Justice of the Peace was present throughout the taking of Mr. Sealey's statement by the Trinidadian authorities. [See Statement, page 1, and see pages 7-9 (Justice of the Peace's certification)]

Further, the Government proffers that the only Government agent arguably "present" during the interview with Mr. Sealey by the Trinidadian authorities was FBI Assistant Legal Attache ("ALAT") Marvin Freeman. Following Mr. Sealey's arrest, ALAT Freeman was contacted and he responded to the Aruca Police Station, where Mr. Sealey was being detained by the Trinidadian authorities. ALAT Freeman did not participate in the interview with Mr. Sealey

-5-

by the Trinidadian authorities, but was seated in a cubical nearby – but not in – the cubical in which Mr. Sealey was being interviewed. As such, ALAT Freeman was able to overhear the interview of Mr. Sealey by the Trinidadian authorities. During Mr. Sealey's interview by the Trinidadian authorities, ALAT Freeman did not ask Mr. Sealey any questions nor did he submit any questions for the Trinidadian authorities to ask of Mr. Sealey.[7]

Moreover, if requested to do so by the Court, the Government proposes to bring to the United States for a hearing one or both of the Trinidadian Police Constables who interviewed Mr. Sealey and FBI ALAT Freeman.

Finally, on the issue of a potential "joint venture," the Government directs the Court's attention to the recent decision of *United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008). In *Abu Ali*, United States citizen Ahmed Omar Abu Ali was arrested on June 8, 2003, in Saudi Arabia, by the Saudi Arabian authorities, following their investigation into the May 12, 2003 suicide bombings in Riyadh, Saudi Arabia, in which approximately 34 people, including 9 Americans, were killed. *Id.* at 223-24. Following his arrest, the Saudi authorities interrogated Abu Ali. During his interrogation by the Saudis, FBI and Secret Service Agents observed (through a one-way mirror from another room) the interrogation by the Saudi's of Abu Ali and submitted questions for the Saudi's to ask of Abu Ali, some of which questions were posed to Abu Ali by the Saudis and some of which were not. *Id.* at 225. During his interrogation by the Saudis, Abu Ali was never provided with Miranda-type warnings. *Id.* at 226. Following an evidentiary

---

[7] It was only after the Trinidadian authorities had completed their interview of Mr. Sealey, and after the Trinidadian authorities had left the room, that ALAT Freeman was permitted to interview Mr. Sealey, whose father was present during ALAT Freeman's separate interview of Mr. Sealey.

-6-

hearing, the District Court determined that no "joint venture" existed between the Saudi and American personnel and it refused to suppress Abu Ali's statements to the Saudis. *Id*. at 227.

Prior to affirming Abu Ali's convictions, the Fourth Circuit canvassed the available case authority on the issue of "joint venture," *see generally id*. at 228-30, and observed, "these cases do permit us to derive one general rule: mere presence [of US Government agents] at an interrogation does not constitute the 'active' or 'substantial' participation necessary for a 'joint venture.'" *Id*. at 229. In its opinion, the Fourth Circuit noted that the United States played no role in the actual arrest of Abu Ali and that Saudi government controlled the questioning of Abu Ali. "In sum, the Saudis were always in control of the investigation. It is clear to us, as it was to the district court, that the [Saudi] Mabahith never acted as a mouthpiece or mere conduit for their American counterparts. Based on these findings, we are convinced, as was the district court, that American law enforcement officials were not trying to 'evade the strictures of *Miranda*,' and the June 15 interrogation did not rise to the level of a joint venture." *Id*. at 230 (citations omitted).

The Fourth Circuit was generally untroubled by the fact that the FBI had submitted questions to the Saudi's for use in their interrogation of Abu Ali. Indeed, the Fourth Circuit cautioned that a contrary finding would be "problematic" for at least two reasons (1) *Miranda* was only intended to regulate the conduct of American law enforcement officers and was not intended to apply extraterritorially to foreign officials absent significant involvement by American law enforcement; and (2) a contrary holding could potentially discourage the United States and its allies from cooperating in international criminal investigations. *Id*. at 230. The Fourth Circuit continued in its caution: "To impose all of the particulars of American criminal process upon foreign law enforcement agents goes too far in the direction of dictation, with all its

-7-

attendant resentments and hostilities. Such an unwarranted hindrance to international cooperation would be especially troublesome in the global fight against terrorism, of which the present case is clearly a part." *Id.*

With regard to Mr. Sealey's August 8, 2006 arrest and interview by the Trinidadian authorities: (1) Mr. Sealey was arrested on an outstanding Trinidadian warrant; (2) no American agent was present at the time of Mr. Sealey's arrest; (3) American officials did not submit questions to the Trinidadians to ask Mr. Sealey in their interrogation of him; (4) Mr. Sealey *was* provided with the Trinidadian version of *Miranda* warnings (which he waived); (5) Mr. Sealey elected (as was his right under Trinidadian law) to have his father present during his interrogation; and (6) a neutral Trinidadian Judicial Officer was present during the Trinidadian interrogation of him.

Hence, Mr. Sealey's August 8, 2006 statement to the Trinidadian authorities was not the result of a "joint venture" between the Trinidadians and the American authorities, and Mr. Sealey was provided by the Trinidadians with safeguards similar to – and as carried out, even superior to – the safeguards sought to be vindicated by *Miranda*.

Thus, unless Mr. Sealey affirmatively and substantially contests facts set forth above, the Government believes the Court should deny Mr. Sealey "discovery" into the issue of a possible "joint venture," as constituting an unwarranted "fishing expedition." In this regard, the Government notes that Mr. Sealey was present during his interview by the Trinidadians *as was Mr. Sealey's father*. Hence, with resort to Rule 15 depositions, Ms. Sealey has readily available sources of information on the subject of his interrogation. Further, as indicated above, if requested to do so by the Court, the Government proposes to bring the Trinidadian Constables

-8-

and ALAT Freeman to the United States for a hearing on this potential issue.

As a result, unless Mr. Sealey comes forward with a legitimate controversy that requires "discovery" for its resolution, the Government urges the Court to deny Mr. Sealey's efforts to take depositions in Trinidad on the issue of a potential "joint venture" between the Trinidadians and the United States authorities.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney

By: /S/
BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C. 20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov

JEANNE M. HAUCH
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C. 20530
(202) 514-5776

-9-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served upon the following counsel, electronically, on this 23rd day of July, 2008:

Steven R. Kiersh
5335 Wisconsin Avenue, N.W.
Suite 400
Washington, DC 20015
*Counsel for Anderson Straker*

John J. Carney
Carney & Carney
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004
*Counsel for Wayne Pierre*

Pleasant S. Brodnax, III
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for Kevin Nixon*

Patrick M. Donahue
Donahue Law Firm
18 West Street
Annapolis, MD 21401
*Counsel for Christopher Sealy*

/s/
_____
Bruce R. Hegyi